771 F.2d 935
 Marsha HOOKS, Plaintiff-Appellant,
v.
Stephen R. HOOKS, Bill Hooks, Charlotte Hooks, Gene Mullins,
Don Churchill, Lt. Robbie Webb, Patrolman Bob
Gardner, Donna Wheeler, Susan Dunn,
Maxiene Stinnett and Ken
Cornett, Defendants-Appellees.
 No. 84-5043.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 8, 1985.
Decided Aug. 23, 1985.
 
 James M. Crain, argued, Knoxville, Tenn., for plaintiff-appellant.
 Frank L. Flynn, Jr., Knoxville, Tenn., for Hooks.
 Dennis G. Brewer, Sr., Irving, Tex., Richard Krieg, Linda Hamilton, Knoxville, Tenn., for Mullins.
 Frank Q. Vettori, argued, Knoxville, Tenn., for Webb, Gardner, Wheeler, Dunn & Stinnett.
 William B. Hubbard, Chief Deputy Atty. Gen., Dianne Stamey, Nashville, Tenn., for Cornett.
 Before KENNEDY and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 This case was brought by the plaintiff, Marsha Hooks, under 42 U.S.C. Sec. 1983, against the defendants, Stephen Hooks, her ex-husband; Bill and Charlotte Hooks, Stephen's parents; Gene Mullins and Don Churchill, purported to be friends of Stephen Hooks; Lt. Robbie Webb and Patrolman Bob Garner[1] of the Blount County, Tennessee Sheriff's Department; Donna Wheeler, Susan Dunn and Maxiene Stinnett, civilian employees of the Blount County Sheriff's Department; and Ken Cornett, an employee of the State of Tennessee Department of Human Services, alleging that the defendants conspired to and did deprive her of the custody of her children, Katonya Denise Hooks and Stephen Roy Hooks II, without due process of law and in violation of the Parental Kidnapping Prevention Act of 1980 (PKPA), Pub.L. No. 96-611, 94 Stat. 3504 (codified at 28 U.S.C. Sec. 1738A). Joined with her civil rights action is a state law cause of action to recover debts from defendants Churchill and Mullins.[2] She appeals from the judgment of the District Court, granting defendants' various motions to dismiss and for summary judgment, and ordering that the case be dismissed.
 
 Facts
 
 2
 Consideration of the issues raised in this case necessitates a detailed account of the facts and procedural steps leading to this appeal. Plaintiff and Stephen Hooks were granted a divorce in Texas on May 29, 1980. Plaintiff was awarded custody of their two children. In January 1983, she decided to move from Dallas County, Texas, to Blount County, Tennessee.[3]
 
 
 3
 She alleges in her complaint that in anticipation of her move to Tennessee, she approached defendant Churchill regarding liquidation of an interest that she held in his business, and he agreed to repurchase her interest for $30,000, to be paid in installments. She alleges that she received certain checks toward this amount from Churchill prior to her departure from Texas on January 12, 1983, two of which, in the total amount of $850.00, were cashed for her by defendant Mullins.
 
 
 4
 After having relocated in Tennessee, plaintiff was informed by Mullins that the checks he had cashed for her had been returned NSF. She paid him $607.00 toward making good the amount, and authorized him to collect a $500.00 debt owed her by a third party in Texas. She alleges receiving additional checks from Churchill in Tennessee. Her Tennessee bank informed her that these were dishonored by the payor bank on the basis of affidavits of forgery executed by Churchill.
 
 
 5
 In April 1983, Mullins charged plaintiff in Texas with forgery of the checks he had cashed. He neither threatened her with such action prior to filing charges, nor informed her after doing so. In May 1983, Charlotte Hooks came to Tennessee to accompany the children back to Texas for an eight-week visit with their father and grandparents. In June 1983, indictments were returned by a Dallas County grand jury charging Marsha Hooks with forgery. At approximately the same time, she alleges, the Hooks defendants began to cut off her contact with her children, refusing to allow her to speak to them on the telephone and returning her letters unopened. She alleges that in July, defendants told her that the children would not be returned to her. On August 12, 1983, plaintiff drove to Grand Prairie, Texas, and surreptitiously removed the children back to Tennessee.
 
 
 6
 After the children were taken, Stephen Hooks alleges that he contacted the local police, who purportedly informed him that they could only act if there was some outstanding criminal charge against Marsha Hooks. Stephen alleges that it was only after receiving this advice that he discovered the forgery warrant against Marsha, whereupon he contacted the Blount County authorities. On August 17, 1983, while plaintiff was in her automobile with her children, she was arrested by defendants Webb and Garner. She was taken to the County Jail and made two court appearances, first executing a waiver of extradition, then subsequently being permitted to withdraw it. She came in contact with Wheeler, Dunn and Stinnett during her processing. She was released from custody on her own recognizance within a few hours of her arrest, but during this interval her children were turned over to Stephen, who immediately left with them for Texas. According to the Sheriff's Department defendants, they acted at the direction of defendant Ken Cornett, with whom Stephen had made contact prior to Marsha's arrest.
 
 
 7
 Shortly after these events, Mullins filed an affidavit with the District Attorney of Dallas County stating that restitution had been made by plaintiff and that he did not wish to prosecute the matter further. On August 25, 1983, the Dallas County Sheriff's Department notified the Blount County Sheriff's Department that charges against plaintiff were being dropped, and on August 30 the indictments were dismissed. On September 2, 1983, Stephen filed a motion in the Texas court requesting that the decree of divorce be modified to give him custody of the children.
 
 
 8
 On September 7, 1983, plaintiff filed a sworn complaint initiating the instant suit. On October 5, 1983, defendant Cornett filed a motion to dismiss under Fed.R.Civ.P. 12(b). On October 6, the Hooks defendants filed a motion for summary judgment. On October 18, plaintiff filed a memorandum in opposition to Cornett's motion to dismiss. On October 20, the Blount County Sheriff's Department defendants filed a motion to dismiss or in the alternative for summary judgment with supporting affidavits, in which they contend that they did not conspire with Stephen or pressure Marsha in any way, and were only following the directions of defendant Cornett in turning the Hooks children over to Stephen. On October 28, the Hooks defendants filed affidavits in support of their motion for summary judgment, in which they denied knowing or having any connection with Mullins and Churchill or conspiring in any way to obtain custody of the children by unlawful means.
 
 
 9
 On November 7, 1983, the District Court filed its memorandum and order granting defendants' motions to dismiss and for summary judgment. In his memorandum, the District Judge stated that plaintiff's first cause of action alleged false arrest, and held that since she was arrested pursuant to a valid warrant, the Blount County Sheriff's Department defendants were entitled to good faith immunity from suit. He held that while Cornett would also be entitled to such immunity, the complaint failed to state a claim against Cornett since it did not allege any unlawful action by him (presumably because he did not participate in the arrest). The civil rights count was dismissed as to the Hooks defendants, Mullins and Churchill, since the court held that it did not appear that they were acting under color of state law. The state law claim against Mullins (seeking to recover that portion of the $500 debt allegedly collected by him, above the amount necessary to make restitution on the $850.00) was dismissed since it did not equal or exceed the jurisdictional amount. The claim to recover the amount allegedly owed to Marsha by Churchill was dismissed for lack of in personam jurisdiction.[4]
 
 
 10
 On the same day, November 7, plaintiff filed a memorandum with supporting affidavit in opposition to the motions to dismiss and for summary judgment of the Hooks and Blount County Sheriff's Department defendants.[5] In her affidavit, she alleged various facts establishing a link between Mullins and Churchill and the Hooks defendants; that at the time of her arrest, before she was taken to the County Jail, she asked if she could make arrangements for the care of her children, and was told by Lt. Webb, " 'No, they're going back to Texas with their father,' or words to that effect;" and that while at the jail she was treated in a derogatory manner and induced to sign the waiver of extradition by defendant Wheeler's promise that if plaintiff did so, her children would be returned to her, and that after so consenting, she was told by Wheeler that the children were on their way to Texas and plaintiff would never see them again. She also stated that subsequent to the filing of her complaint, she represented herself at a hearing in state court in Texas on Stephen's motion to amend the decree of custody, pursuant to which among other things the children were returned to her pending the outcome of an investigation of their home life.
 
 
 11
 On November 16, 1983, plaintiff filed a motion for rehearing with the District Court, pointing out to the court that her civil rights claim was based on the deprivation of the custody of her children, not on false arrest. She contended that private persons conspiring with state actors to effect a deprivation of civil rights do act under color of state law; that the claim against Mullins could be joined with the civil rights claim against him under Fed.R.Civ.P. 18; and that the court erred in dismissing her claim against Churchill, arguing that knowingly mailing a bad check into another state did establish the minimum contacts with that state necessary to create in personam jurisdiction.
 
 
 12
 The Blount County Sheriff's Department defendants filed a memorandum in opposition to the motion to rehear, arguing primarily that "[t]he officers attempted to turn the children over to the Tennessee Department of Human Services who would not take them and who advised the officers to turn the children over to their natural father. They were left with no alternative and due to the emergency situation took this action." Defendant Cornett also filed a response to the motion for rehearing, contending that he was entitled to good faith immunity, and further that since plaintiff did not specifically dispute the court's finding that she failed to state a claim against Cornett in the motion to rehear, the motion should be denied as to him. The Hooks defendants also responded to the motion, contending that the PKPA was inapplicable to the case since it pertained to jurisdiction in interstate custody disputes and the plaintiff's allegations did not involve a change of custody. They also relied on their "uncontradicted" assertion that they had nothing to do with the filing of criminal charges against the plaintiff and did not even know Mullins and Churchill.
 
 
 13
 On December 20, 1983, the District Court denied plaintiff's motion to rehear in a two-line order. It concluded that "[t]he question involved was one of domestic relations and this Federal Court is not a domestic relations court." Plaintiff filed her notice of appeal on January 6, 1984.
 
 
 14
 At some date after the filing of this appeal not apparent from the record, counsel for the Hooks defendants filed suit in the District Court, requesting that the court accord full faith and credit to the judgment entered by the Texas state court following plaintiff's pro se appearance noted above, directing that she dismiss with prejudice her federal court case, and enjoin her from further prosecuting of her appeal. On April 6, 1984, the District Court dismissed plaintiffs' (defendants herein) complaint for injunctive relief, concluding that it lacked the authority to enjoin the Court of Appeals from hearing appeals of its decisions.
 
 
 15
 On May 3, 1984, the Hooks appellees filed a motion to dismiss with this Court on the same basis asserted above. On November 9, another panel of this Court issued an order directing appellant to show cause why this appeal should not be dismissed for mootness. Following her response, the motions panel referred appellees' motion to dismiss to the hearing panel for consideration.
 
 Discussion
 
 16
 We consider the issues raised in this case as follows. First, we address whether plaintiff's complaint states a cause of action under Sec. 1983. Concluding that it does, we consider whether, presuming a conspiracy to exist, the Hooks defendants, Mullins and Churchill acted under color of state law. Concluding that they would be state actors for the purposes of Sec. 1983 if participants in a conspiracy with the Tennessee defendants to deprive plaintiff of the custody of her children, we consider whether, as a matter of law, an issue of fact exists as to whether any or all of the Texas defendants were members of such a conspiracy. Since we conclude that Churchill could not be a member of such a conspiracy, we then address whether there is in personam jurisdiction over Churchill in Tennessee for purposes of plaintiff's breach of contract claim. We then consider whether the allegations in plaintiff's untimely affidavit in opposition to defendants' motion to dismiss or for summary judgment should be considered by this Court. Finally, we address the full faith and credit issue raised by appellees' motion to dismiss this appeal.
 
 I. CAUSE OF ACTION
 
 17
 It is well-settled that parents have a liberty interest in the custody of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972); Lossman v. Pekarske, 707 F.2d 288, 290 (7th Cir.1983); Ruffalo v. Civiletti, 702 F.2d 710, 714-15 (8th Cir.1983); Ellis v. Hamilton, 669 F.2d 510, 512 (7th Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); Duchesne v. Sugarman, 566 F.2d 817, 824-25 (2d Cir.1977); Elam v. Montgomery County, 573 F.Supp. 797, 802 (S.D. Ohio 1983); see also Huynh Thi Anh v. Levi, 586 F.2d 625, 632 (6th Cir.1978). Hence, any deprivation of that interest by the state must be accomplished by procedures meeting the requirements of due process.
 
 
 18
 In the civil rights count of her complaint, plaintiff alleged that she "has been falsely arrested, has been humilitated [sic] and embarrassed, has been compelled to incur legal and other expenses to secure her freedom; has incurred medical expenses as a direct and proximate result of the Defendants' actions; has been wrongfully deprived of the custody of her children, and has incurred great pain, suffering and mental anguish ..." (emphasis added). In granting the Blount County Sheriff's Department defendants' motion to dismiss or for summary judgment, the District Court concluded that plaintiff failed to state a claim under Sec. 1983 for false arrest. On appeal, she argues that the court's ruling was erroneous, as "the thrust of the conspiracy alleged in the Complaint was not the arrest of Plaintiff, but the removal of her children."
 
 
 19
 It is hardly apparent from the language quoted above that the "thrust" of plaintiff's complaint was that she was deprived of the custody of her children without due process. Her counsel has further confused the issue by suggesting that her civil rights cause of action is predicated upon the PKPA. Appellees are correct in contending that plaintiff fails to state a cause of action under the PKPA, since that statute pertains to interstate jurisdictional disputes involving conflicting custody decrees,[6] and the acts of the Tennessee defendants neither failed to enforce nor modified the Texas decree. Nor does plaintiff state a claim for false arrest, and we affirm the District Court's dismissal of any such claim. However, plaintiff's complaint does allege wrongful deprivation of the physical custody of her children without due process, as her counsel endeavored to clarify in his memorandum in opposition to defendants' motion to dismiss or for summary judgment, memorandum in support of motion for rehearing, and before this Court. Hence, it states a cause of action under Sec. 1983.
 
 
 20
 The District Court apparently recognized that the gravamen of plaintiff's complaint was deprivation of custody, since it denied her motion for rehearing on the ground that "[t]he question involved was one of domestic relations and this Federal Court is not a domestic relations court." We understand this statement to indicate that the District Court was relying upon the domestic relations exception to federal diversity jurisdiction. Traditionally, the federal courts have declined to accept jurisdiction over parent-child, domestic relations or custody disputes and in adoption matters subject to state law and state court disposition. See, e.g., DiRuggiero v. Rodgers, 743 F.2d 1009, 1018-19 (3rd Cir.1984); Zak v. Pilla, 698 F.2d 800, 801 (6th Cir.1982) (per curiam); Huynh Thi Anh, 586 F.2d at 632-33. However, the prudential concerns underlying such abstention are completely absent in the instant case. While plaintiff's claim arises out of a custody dispute, adjudication of the alleged civil rights violation to the extent it seeks damages does not require the court to exercise jurisdiction over or resolve any of those state law matters within the scope of the domestic relations exception. See Elam, 573 F.Supp. at 801; see also DiRuggiero, 743 F.2d at 1020 (domestic relations exception does not apply to state law tort claim of child abduction). We conclude that the District Court erred in its reliance on the domestic relations exception in refusing to consider the merits of her claim that she suffered damages by being deprived of the physical custody of her children without due process.
 
 
 21
 The Tennessee defendants contend that they were acting in an emergency situation in turning the children over to their father, Stephen, after plaintiff's arrest, and hence should be entitled to good faith immunity from suit.
 
 
 22
 "[A]s a matter of constitutional law, the initial removal of the children without parental consent or a prior court order was permissible [in an emergency]. Cf. Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 599, 70 S.Ct. 870 , 94 L.Ed. 1088 (1950). However, in those "extra-ordinary situations" where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed. Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780 , 28 L.Ed.2d 113 (1971).
 
 
 23
 Duchesne, 566 F.2d at 826 (emphasis in original); accord Lossman, 707 F.2d at 292; Ruffalo, 702 F.2d at 715.
 
 
 24
 Here the children were turned over to Stephen by the Tennessee defendants allegedly with the knowledge that they would immediately be taken to Texas and thus out of the jurisdiction of Tennessee, effectively eliminating the opportunity for plaintiff to receive a post-deprivation hearing. Cf. Ellis, supra. The Tennessee defendants do not contend that they made any effort to request or direct Stephen to remain in Tennessee until a hearing could be held.[7] Plaintiff alleges that their actions were part of a conspiracy with Stephen Hooks to wrongfully deprive her of physical custody of her children. Whether any or all of the Tennessee defendants were acting in good faith is an issue of fact properly resolved at trial. Elam, 573 F.Supp. at 805; see also Downs v. Sawtelle, 574 F.2d 1, 16 & n. 19 (1st Cir.), cert. denied, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978).
 
 II. STATE ACTION
 
 25
 Without citation to any authority, the District Court, in its memorandum accompanying its order dismissing plaintiff's case, held that it did not appear that the Texas defendants were acting under color of state law. It is true that an allegation of misuse or abuse of a valid statute does not state a cause of action under Sec. 1983, but challenges only private action. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 941, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982). If plaintiff's claim in this case had been for false arrest, as the District Court initially understood, its holding might have been sustainable under this rationale.
 
 
 26
 As stated above, however, such was not the claim asserted by the plaintiff. Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of Sec. 1983. Lugar, 457 U.S. at 941, 102 S.Ct. at 2755; Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); Adickes v. Kress & Co., 398 U.S. 144, 150-52, 90 S.Ct. 1598, 1604-06, 26 L.Ed.2d 142 (1970); see, e.g., Cooper v. Molko, 512 F.Supp. 563 (N.D.Cal.1981) (members of religious group stated cause of action under Sec. 1983 against parents, deprogrammers and police, based on allegation that police knowingly allowed abduction of plaintiff by deprogrammers as part of conspiracy among defendants). If any or all of the Tennessee defendants deprived the plaintiff of the custody of her children without due process, liability under Sec. 1983 could extend to Stephen Hooks as well, Lugar, 457 U.S. at 942, 102 S.Ct. at 2756 (private party initiating attachment procedure under state law later successfully challenged as unconstitutional acts under color of state law and is liable for participating in deprivation), although at trial he would not necessarily be foreclosed from asserting an affirmative defense of good faith, id. at 942 n. 23, 102 S.Ct. aty 2756 n. 23. As to the other Texas defendants, whether they are also liable depends on whether they were participants in the alleged conspiracy.
 
 III. CONSPIRACY
 
 27
 A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. See Hobson v. Wilson, 737 F.2d 1, 51-52 (D.C.Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir.1979), cert. denied in part, granted in part and rev'd on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).
 
 
 28
 Applying these principles to the instant case, and assuming for the time being all of plaintiff's allegations to be true, there are no facts or inferences therefrom to support her civil rights claim against Mullins and Churchill, or Charlotte and Bill Hooks. In her complaint, she alleged
 
 
 29
 that Defendants Mullins and Churchill were induced to take these actions so that Defendants Hooks could theeafter [sic] lure her into Texas, cause her arrest, and either obtain judicial custody of the children while she was under arrest and facing trial on felony charges, or in the alternative to extort Plaintiff's agreement to a change of custody in return for dismissing these groundless charges.
 
 
 30
 8. After the plot of the Defendants Hooks, Churchill and Mullins was frustrated by her recovery of possession of the Children, the Defendant Stephen Roy Hooks came to Maryville, Tennessee on August 17, 1983 and enlisted the assistance of the Defendants Webb, Gardner, Wheeler, Stinnett, Cornett and Dunn, or some of them, in his plot to unlawfully gain possession of the Children. All actions thereafter taken by said Defendants were taken with the knowledge that their principal and motivating purpose was to permit the Defendant Stephen Hooks to obtain possession of these children. [emphasis added]
 
 
 31
 Plaintiff's only civil rights cause of action is for the deprivation of the custody of her children in Tennessee without due process. In effect, plaintiff alleges the existence of two separate conspiracies, the first of which was short-circuited by her surreptitious removal of the children from their grandparents' home in Texas back to Tennessee, and the second of which commenced when Stephen contacted the Tennessee defendants. At the time Mullins and Churchill allegedly acted in furtherance of the conspiracy, there was no way that they could have anticipated the chain of events that would be triggered by plaintiff's surreptitious removal of the children from Texas back to Tennessee. Cf. Windsor v. The Tennessean, 719 F.2d 155, 161-62 (6th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 105, 108, 83 L.Ed.2d 50 (1984). Thus, the actions of Mullins and Churchill were not part of a single plan to unlawfully deprive plaintiff of the custody of her children in Tennessee. As to Charlotte and Bill Hooks, plaintiff simply does not allege that they were participants in or even knew of "[Stephen's] plot to unlawfully gain possession of the Children." Nor does she allege facts that would tend to show that they participated in the conspiracy charged.[8] Hence, we conclude that summary judgment was properly granted in favor of these defendants.
 
 IV. JURISDICTION
 
 32
 Since we have concluded that Mullins and Churchill are entitled to summary judgment on plaintiff's civil rights claim against them, pendent jurisdiction does not exist over her state law claims against them. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well." (footnote omitted)). Plaintiff does not argue that in the absence of pendent jurisdiction her claim against Mullins should not be dismissed, and the District Court did not err in so ordering. However, she does contend that the District Court erred in dismissing her claim against Churchill, reasoning that when a person knowingly sends a bad check into another state, the drawer has caused an effect in the state of the drawee sufficient to establish the minimum contacts necessary to support the exercise of in personam jurisdiction.[9]
 
 
 33
 Plaintiff has alleged no contacts on the part of Churchill with the state of Tennessee other than the fact that he agreed in Texas to purchase her interest in his Texas business in anticipation of her moving to Tennessee, repudiated certain checks sent to Tennessee in satisfaction of that obligation, and breached his agreement to pay. "If the question is whether an individual's contract with an out-of-state party alone can automatically establish minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." Burger King Corp. v. Rudzewicz, --- U.S. ----, ----, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); cf. Huskey v. Huskey, 366 F.Supp. 186 (E.D.Tenn.1972) (insufficient contacts to exercise personal jurisdiction over father in Tennessee where son alleged breach of contract entered into between father and son in Indiana for father to pay son's expenses to attend college in Tennessee). We conclude that the District Court was correct in dismissing plaintiff's state law claim against Churchill on jurisdictional grounds.
 
 V. PLAINTIFF'S AFFIDAVIT
 
 34
 The District Court never addressed whether, upon a proper understanding of plaintiff's civil rights claim, summary judgment should be granted defendants because there was no disputed issue of fact on which plaintiff might be entitled to recover. However, this Court may examine the record and affirm the District Court on other grounds if we determine that there exists no material controversy regarding matters of fact or law. See, e.g., Oyler v. National Guard Association, 743 F.2d 545, 555 (7th Cir.1984); Bernard v. City of Palo Alto, 699 F.2d 1023, 1024-25 n. 1 (9th Cir.1983) (per curiam); Hoffa v. Fitzsimmons, 673 F.2d 1345, 1361-62 (D.C.Cir.1982).
 
 
 35
 Fed.R.Civ.P. 56(e) requires that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Thus, "summary judgment was proper where the facts alleged in the complaint were directly contravened in the affidavits supporting the defendants' motion for summary judgment, and where the plaintiff's version of the facts was not presented in any deposition, affidavit, or other document on file, except the pleadings." Smith v. Hudson, 600 F.2d 60, 65 (6th Cir.1979) (citing R.E. Cruise, Inc. v. Bruggeman, 508 F.2d 415 (6th Cir.1975) (per curiam)), cert. denied, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).
 
 
 36
 The Blount County Sheriff's Department defendants contend that plaintiff's affidavit in opposition to defendants' motions for summary judgment should not be considered by this Court because it was not timely filed.[10] First, we note that since plaintiff's complaint was verified, to the extent that the allegations therein are based on personal knowledge, it satisfies the requirements of Rule 56(e) as an opposing affidavit. Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir.1985); Enquip, Inc. v. Smith-McDonald Corp., 655 F.2d 115, 119 (7th Cir.1981); Barker v. Norman, 651 F.2d 1107, 1114-15 (5th Cir. Unit A 1981); Sames v. Gable, 100 F.R.D. 749, 750-51 (E.D.Pa.1983). More to the point, we conclude that plaintiff's affidavit and the allegations contained therein are properly before this Court.
 
 
 37
 While it is within the discretion of the district courts whether to consider affidavits submitted in an untimely fashion, see Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 29-30 (1st Cir.1980); DeLong Corp. v. Raymond International, Inc., 622 F.2d 1135, 1139-40 & n. 5 (3d Cir.1980); Sames, 100 F.R.D. at 751, the court below never gave any indication that it was declining to consider plaintiff's affidavit on rehearing because it was untimely or for any other reason. At oral argument, plaintiff's counsel explained that he delayed filing his memorandum and supporting affidavit in response to defendants' motions for summary judgment because he was waiting for all of the various defendants to file their answers and motions, and in anticipation of a pretrial conference scheduled for a date not apparent in the record but beyond the date on which the District Court entered its order of dismissal and counsel filed his memorandum and affidavit. Further, although the Hooks defendants filed their summary judgment motion on October 6, 1983, they did not file their supporting affidavits until October 28, ten days before plaintiff filed her affidavit in opposition. Until the supporting affidavits were filed, plaintiff would not know what facts she needed to controvert. Given that plaintiff's affidavit "was sufficient to alert the court to the presence of an issue of material fact," Enquip, 655 F.2d at 119, and counsel offered a plausible explanation for its untimeliness and filed a timely motion for reconsideration, we are obliged in this instance to consider plaintiff's affidavit. See Rhoades v. Penfold, 694 F.2d 1043, 1049 (5th Cir.1983); Barker, 651 F.2d at 1128-29; cf. Foy v. Norfolk & Western Railway Co., 377 F.2d 243, 246-47 (4th Cir.1967).
 
 
 38
 In reviewing the District Court's disposition of defendants' motions for summary judgment,[11] we must consider the allegations contained in plaintiff's affidavit together with those in her sworn complaint and reasonable inferences therefrom in the light most favorable to her. Hudson, 600 F.2d at 63 (citing cases). Applying this test, we cannot say that there is no set of facts that plaintiff may prove pursuant to which any or all of the defendants, apart from Charlotte and Bill Hooks, Mullins and Churchill, could be found liable as participants in a conspiracy to deprive her of the custody of her children without due process. While her claim is most tenuous respecting Maxiene Stinnett, after careful consideration we have concluded that summary judgment in her favor is not appropriate at this time. Plaintiff has alleged that Stinnett refused to allow plaintiff to make a telephone call as part of the conspirator's plot to unlawfully turn possession of the children over to Stephen. It remains for plaintiff to prove the truth of these allegations, which Stinnett denied in her affidavit, and that defendant so acted in furtherance of the alleged conspiracy.[12]
 
 VI. DEFENDANTS' MOTION TO DISMISS
 
 39
 We have already recounted the procedural history of this case, including the filing of the Hooks defendants' motion to dismiss plaintiff's appeal. This motion is based on an order entered in the District Court of Dallas County, Texas, 330th Judicial District, in a case captioned In re: The Interest of: Katonya Denise Hooks and Stephen Roy Hooks, II, No. 80-2498 (Feb. 3, 1984). It is headed, "Amended Temporary Orders," and states that on October 11, 1983, a hearing was held on the application of Stephen Hooks for Temporary (Custody) Orders, at which Marsha Hooks appeared pro se. The court's order provided, as pertinent to this case:
 
 
 40
 The Court, having considered the pleadings, the evidence, and the arguments presented, the Court finds, that:
 
 
 41
 The Court has jurisdiction over the parties in the subject matter of this suit and all necessary prerequisites of the law have been legally satisfied. The Court finds that the parties have agreed in open court to the following Orders for the safety and welfare of the children and that these Orders are in the best interests of the children:
 
 
 42
 ....
 
 
 43
 (7) There is now pending in the United States District Court for the Eastern District of Tennessee Northern Division, Docket No. 3-83-540, styled Marsha Hooks vs. Stephen Roy Hooks, Bill Hooks, Charlotte Hooks, Gene Mullins, Don Churchill, Lt. Robbie Webb, Patrolman, Bob Gardner, Donna Wheeler, Susan Dunn, Maxiene Stinnett, and Ken Cornett. Said case is to be dismissed with prejudice on or before November 15, 1983, and not to be refiled against Stephen Roy Hooks, Bill Hooks, Charlotte Hooks, Gene Mullins, and Don Churchill.
 
 
 44
 The movants contend that this Court must accord full faith and credit to the above order of the District Court for Dallas County, Texas, and dismiss plaintiff's appeal. Plaintiff responds that her federal case was never discussed at the October 11 state court hearing and that she never agreed to dismiss her claim, that the state court order is void because the court lacked subject matter jurisdiction, and that full faith and credit should not be accorded the order as a matter of policy, because it would defeat the objective of Congress in enacting the PKPA. We address each of plaintiff's arguments in turn.
 
 
 45
 A. Res Judicata Effect of Order Under Texas Law
 
 
 46
 The judgments of state courts are afforded the same preclusive effect in the federal courts to which they would be entitled in the courts of the state in which they were entered. 28 U.S.C. Sec. 1738. "Thus, if a state court judgment is subject to collateral attack in the state that rendered it, the judgment may be collaterally attacked in federal court." Fehlhaber v. Fehlhaber, 681 F.2d 1015, 1020 (5th Cir. Unit B 1982) (footnote omitted), cert. denied, --- U.S. ----, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983). To resolve this issue, we must undertake a two-step inquiry. First, we must determine whether the type of order in question would have preclusive effect under Texas law. Since we resolve that question in the affirmative, we must then consider whether the arguments asserted by plaintiff would be a valid basis for collateral attack in another Texas proceeding.
 
 
 47
 The order specifically recites that it was agreed to by the parties in open court. Under Texas law, "an agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding." McCray v. McCray, 584 S.W.2d 279, 281 (Tex.1979) (citing Pollard v. Steffens, 161 Tex. 594, 343 S.W.2d 234, 239 (1961); see Ex Parte Gorena, 595 S.W.2d 841, 844 (Tex.1979); Hill v. Hill, 599 S.W.2d 691, 692 (Tex.Civ.App.1980); Sawyer v. Smith, 552 S.W.2d 936, 940 (Tex.Civ.App.1977); Black v. Wilemon, 539 S.W.2d 203, 204 (Tex.Civ.App.1976); Ranger Insurance Co. v. Rogers, 530 S.W.2d 162, 166-67 (Tex.Civ.App.1975); Sun Life Assurance Co. v. Clyce, 512 F.Supp. 430, 433 (N.D.Tex.1980).
 
 
 48
 As a general rule, nonfinal orders or judgments are not entitled to full faith and credit. Aiello v. City of Wilmington, 470 F.Supp. 414, 419 (D.Del.1979), aff'd, 623 F.2d 845 (3d Cir.1980). See generally 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction Sec. 4432 (1981) [hereinafter cited as Wright]. For this reason, custody decrees in general, and the "Amended Temporary Orders" at issue in particular, present difficult problems in the application of full faith and credit principles. Insofar as a custody decree is modifiable in the rendering state, full faith and credit would not prevent it from being modified in some other forum state as well. Flood v. Braaten, 727 F.2d 303, 308-09 (3d Cir.1984). "Thus, full faith and credit cannot readily be applied to custody decrees because federal courts may only enforce final state decrees that are no longer subject to modification, and the general rule is that such decrees are not subject to full faith and credit." McDougald v. Jenson, 596 F.Supp. 680, 685 (N.D.Fla.1984).
 
 
 49
 In this case, however, we conclude that the portion of the state court order providing for dismissal of plaintiff's case is entitled to full faith and credit. First, we note that finality for the full faith and credit purposes is not equivalent to finality for the purposes of appeal. Aiello, 470 F.Supp. at 419 (citing cases). See generally 18 Wright, supra, at Secs. 4432, 4434. Plaintiff's purported agreement to dismiss her federal suit is divisible from the ultimate disposition by the court of the question of custody, and in a practical and logical sense is final. Second, Texas law accords the same preclusive effect to agreed interlocutory judgments that it does to agreed final judgments. Gregory v. White, 604 S.W.2d 402, 403-04 (Tex.Civ.App.1980), cert. denied, 452 U.S. 939, 101 S.Ct. 308, 69 L.Ed.2d 953 (1981).
 
 
 50
 Consequently, we must address whether plaintiff would be entitled under Texas law to collaterally attack the order in a separate proceeding. She asserts two possible grounds for collateral attack. The first, that she never agreed to the portion of the order directing dismissal of her federal case, is addressed and rejected below. The second, that the order was void for lack of subject matter jurisdiction, is considered in the section following.
 
 
 51
 Although an agreed judgment is accorded the same finality under Texas law as a final judgment rendered at the conclusion of an adversary proceeding, it must be interpreted as a contract to which the rules governing contract interpretation apply. McCray, 584 S.W.2d at 281; Browning v. Holloway, 620 S.W.2d 611, 614-15 (Tex.Civ.App.1981); Black, 539 S.W.2d at 204; accord Echols v. Nimmo, 586 F.Supp. 467, 469 (W.D.Mich.1984). A valid consent judgment cannot be rendered by a court absent the agreement of all parties thereto, Grasso v. Ellis, 608 S.W.2d 347, 349 (Tex.Civ.App.1980); Gregory, 604 S.W.2d at 403; Sawyer, 552 S.W.2d at 939, and must strictly conform to the agreed upon terms, Grasso, 608 S.W.2d at 349; Sun Life, 512 F.Supp. at 433. "However, if a party to the cause wishes to contend that he did not in fact agree to the judgment, he must do so by a direct attack upon the judgment and cannot do so in a collateral proceeding." Sawyer, 552 S.W.2d at 939-40 (emphasis added).B. Subject Matter Jurisdiction
 
 
 52
 A judgment may be subject to collateral attack on the ground that the rendering court lacked jurisdiction or capacity to act as a court. Ranger Insurance, 530 S.W.2d at 167; H.C. Price Co. v. Compass Insurance Co., 483 F.Supp. 171, 174 n. 3 (N.D.Tex.1980). It is well-settled, however, that full faith and credit extends to state court determinations of subject matter jurisdiction over a controversy, as well as the merits of the controversy itself. See Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Nagle v. Ringling Bros. and Barnum & Bailey Combined Shows, Inc., 386 F.Supp. 349, 358 (S.D.Tex.1974). "Both Texas and federal authorities recognize that only void judgments as opposed to voidable judgments may be collaterally attacked, and that only judgments which show a jurisdictional defect on the face of the record are classified as void judgments." Little v. Celebrezze, 259 F.Supp. 9, 11 (N.D.Tex.1966).
 
 
 53
 The distinction between void and voidable judgments was elaborated in Lubben v. Selective Service System Local Board No. 27, 453 F.2d 645 (1st Cir.1972):
 
 
 54
 A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void.
 
 
 55
 453 F.2d at 649 (footnotes omitted); accord Coleman v. Court of Appeals, Division No. 2, 550 F.Supp. 681, 684 (W.D.Okla.1980); Hobbs v. United States Office of Personnel, 485 F.Supp. 456, 458 (M.D.Fla.1980).
 
 
 56
 Plaintiff's argument is that the Dallas County court lacked subject matter jurisdiction[13] under the terms of the PKPA and Uniform Child Custody Jurisdiction Act (UCCJA), Tex.Fam.Code Secs. 11.51-11.75, which became effective September 1, 1983, the day before Stephen filed his petition with the court to amend the orders of custody. She contends that by virtue of these statutes, Tennessee had become the "home state" of the children.[14] As adopted by Texas, Sec. 11.53(d) of the UCCJA provides: "Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired." See Heartfield v. Heartfield, 749 F.2d 1138, 1141-42 (5th Cir.1985).[15] Hence, she concludes, the court acted without subject matter jurisdiction and the order in question is void and subject to collateral attack.
 
 
 57
 While the Dallas County court may have erred in determining that it retained continuing jurisdiction to modify custody pursuant to Stephen's petition, applying the principles enunciated above, this error would merely render the order in question voidable, but not void. The court certainly had potential jurisdiction over the dispute.
 
 
 58
 If a court having potential jurisdiction renders a judgment when the potential jurisdiction has not been activated, and the defect is apparent from the face of the judgment, then the judgment is void and subject to either direct or collateral attack. Fulton v. Finch, 162 Tex. 351, 346 S.W.2d 823 (1961). If ... the court having potential jurisdiction renders a judgment regular on its face that contains recitations stating that potential jurisdiction has been activated, ... then the judgment is voidable, not void, and may be set aside only by a direct attack. Akers v. Simpson, 445 S.W.2d 957 (Tex.1969). The latter result is because a court of potential jurisdiction has the power to determine whether its jurisdiction has been activated, and the recitations making that determination are immune from attack in a collateral proceeding.
 
 
 59
 Waldron v. Waldron, 614 S.W.2d 648, 650 (Tex.Civ.App.1981); see also Cavazos v. Hancock, 686 S.W.2d 284, 286-87 (Tex.App.1985). "An error in interpreting a statutory grant of jurisdiction is not ... equivalent to acting with total want of jurisdiction and does not render the judgment a complete nullity." Jones v. Giles, 741 F.2d 245, 248 (9th Cir.1984); see also Coleman, 550 F.Supp. at 685. We conclude that under Texas law, the portion of the order in question directing dismissal by plaintiff of the instant case is entitled to preclusive effect and not subject to collateral attack.
 
 
 60
 C. Policy-Based Exceptions to the Operation of Sec. 1738
 
 
 61
 In exceptional cases, certain courts have held that full faith and credit will not be accorded state court judgments regular on their face, where to do so would defeat a vital and overriding federal interest. See, e.g., Red Fox v. Red Fox, 564 F.2d 361, 365 n. 3 (9th Cir.1977); American Mannex Corp. v. Rozands, 462 F.2d 688, 690 (5th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972); 18 Wright, supra, Sec. 4469, at 662-63. Plaintiff contends that if full faith and credit is given to the Dallas County state court order in this instance, it would be tantamount to permitting a kidnapper to obtain ransom for the return of her abducted children, and would defeat the specific purpose of Congress in passing the PKPA to deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards. See note 6 supra.
 
 
 62
 We are not insensitive to plaintiff's argument. Nevertheless, we do not feel that a judicially created exception to the operation of Sec. 1738 is appropriate in this situation.
 
 
 63
 We find the PKPA inapposite. As we have stated, plaintiff's cause of action is not grounded in that statute, but in the Due Process Clause of the Fourteenth Amendment. As far as this Court is aware, plaintiff has not attempted to avoid the assertion of jurisdiction by the State of Texas by filing a petition for custody in Tennessee. Federal jurisdiction under the PKPA, i.e., a federal interest, does not arise until the courts of two different states have entered conflicting custody decrees. See Heartfield, 749 F.2d at 1143.
 
 
 64
 As far as the federal interest in protection of civil rights, the Supreme Court has held that full faith and credit principles apply with equal force in Sec. 1983 as in other causes of action brought in the federal courts. Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).
 
 
 65
 Finally, counsel has emphasized that for economic reasons plaintiff was forced to appear at the October 11 hearing in the Dallas County court without representation. The Supreme Court has held that the Constitution does not require the appointment of counsel for indigent parents in every parental status termination proceeding. Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In light of Lassiter, we do not regard the fact that plaintiff was unrepresented at the state court hearing as a sufficient basis upon which to create an exception to the requirement that we give full faith and credit to the state court order in question.
 
 Disposition of Plaintiff's Claim on Remand
 
 66
 Although we have held that the order in question is entitled to full faith and credit and not subject to collateral attack, this holding is relevant only to the Hooks defendants, Mullins and Churchill, as the order only directs dismissal of plaintiff's federal case against these defendants. Therefore, we must remand to the District Court for further proceedings. On remand, the court is directed to allow plaintiff a reasonable time within which to initiate a review of the contested portion of the Dallas County court's order in the state courts in Texas.[16] If such a proceeding is initiated, the District Court should hold her claim against Stephen Hooks in abeyance pending resolution of her challenge to the validity of the order in question. Should the plaintiff choose not to initiate such a proceeding, or fail to do so within the time specified by the District Court, the Court is directed to dismiss her claim against Stephen Hooks and proceed on her claims against the Blount County Sheriff's Department defendants and defendant Cornett. The portions of the District Court order dismissing the claims against defendants Charlotte and Bill Hooks, Mullins and Churchill are affirmed.
 
 
 67
 IT IS SO ORDERED.
 
 
 68
 WELLFORD, Circuit Judge, concurring.
 
 
 69
 I concur in the result reached by the majority, but write separately to express my doubt about the necessity of any discussion regarding personal jurisdiction over defendant Churchill. Because we hold that there is no federal claim against Churchill, I would hold we lack subject matter jurisdiction over plaintiff's state claim against him. The rule of Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), requiring complete diversity, precludes application of diversity jurisdiction. See C. Wright, Law of Federal Courts 95 (3d ed. 1976). Moreover, I doubt seriously that the state claim against Churchill and the federal claim against the Tennessee defendants can be said to arise from a 'common nucleus of operative fact' so as to support any form of "pendent party" jurisdiction, see Wright, supra at 76, assuming that such a theory would be applied in this circuit.
 
 
 
 [1]
 Mistakenly spelled "Gardner" in plaintiff's complaint
 
 
 [2]
 Two additional counts in her original complaint requested the issuance of a writ of habeas corpus to regain custody of her children, and an order directing Stephen Hooks to pay past due child support and to transfer title to an automobile, pursuant to Marsha and Stephen's Texas Decree of Divorce. These matters were apparently resolved to the parties' satisfaction in state court proceedings in Texas during the pendency of this case, and she does not appeal from the dismissal of these claims
 
 
 [3]
 It is not contended that she was barred from doing so by the terms of the Texas custody decree
 
 
 [4]
 Churchill had not to that point and has never filed an answer or made an appearance in this case
 
 
 [5]
 The time stamps indicate that the court's memorandum and order was filed 11:00 a.m., and the plaintiff's memorandum and affidavit 2:30 p.m
 
 
 [6]
 The PKPA provides, in pertinent part: "The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another States." 28 U.S.C. Sec. 1738A(a). While plaintiff is correct in identifying the broad objective of the Act as prevention of parental kidnapping in custody disputes, this purpose was accomplished by establishing uniform jurisdictional rules to discourage non-custodial parents from removing their children to another forum in hopes of obtaining a favorable custody decree, see, e.g., Peterson v. Peterson, 464 A.2d 202 (Me.1983), not by creating a private federal civil rights cause of action
 
 
 [7]
 Although not directly applicable to the events herein, Title 37, ch. 1, pt. 1, of the Tennessee Code, the General Provisions pertaining to Juvenile Courts and Proceedings, provide, in part:
 37-1-101. Construction.--(a) This part shall be construed to effectuate the following public purposes:
 ....
 (4) To provide a simple judicial procedure through which this part is executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced;
 ....
 37-1-113. Taking into custody--Grounds.--(a) A child may be taken into custody:
 ....
 (3) By a law-enforcement officer, social worker of the department of human services, or duly authorized officer of the court, if there are reasonable grounds to believe that the conditions specified in Sec. 37-1-114(a)(2) exist.
 ....
 37-1-114 Detention or shelter care of child prior to hearing on petition.--(a) A child taken into custody shall not be detained or placed in shelter care prior to the hearing on the petition unless there is probable cause to believe that:
 ....
 (2) The child is a neglected, dependent or abused child, and in either case his detention or shelter is required because the child ... may abscond or be removed from the jurisdiction of the court, and ... there is no less drastic alternative to removal of the child from the custody of his parent ... available which would reasonably and adequately ... prevent the child's removal from the jurisdiction of the court pending a hearing.
 37-1-115. Custody--Release to proper party--Warrant for custody.--(a) A person taking a child into custody shall within a reasonable time:
 (1) Release the child to his parents ... upon their promise to bring the child before the court when requested by the court....
 ....
 37-1-117. Investigation and release or commitment--Petition--Hearings.--
 ....
 (c) If a child alleged to be dependent and neglected is removed from the custody of his parent ... prior to a hearing on the petition, a preliminary hearing shall be held no later than three (3) days after the child's removal....
 
 
 [8]
 Although she does state in her affidavit that she contacted Charlotte Hooks after the children were taken back to Texas by Stephen, and Charlotte told her "that the Children would not be returned to her, and that she would never see the Children again," plaintiff does not specifically allege that the children were living with their grandparents. Even if it had been alleged, that fact would not necessarily involve them in the plot to obtain unlawful possession of the children, rather than in a tortious withholding of the children from her rightful possession, which is not charged by the plaintiff in this case
 
 
 [9]
 The jurisdictional reach of federal courts sitting in diversity is determined by the law of the state in which the court is located. Jurisdiction under the Tennessee long-arm statute goes to the limits of due process. Tenn.Code Ann. Sec. 20-2-214(a)(6) (1980); Pickens v. Hess, 573 F.2d 380, 385 (6th Cir.1978)
 
 
 [10]
 Local Rule 12(b), Eastern District of Tennessee, allows respondent five days after service of movant's motion and brief to submit a response, brief, or affidavits. However, Fed.R.Civ.P. 56(c) requires that a summary judgment motion be served at least 10 days before the time fixed for hearing, and that the adverse party may serve opposing affidavits prior to the hearing date. See Management Investors v. United Mine Workers, 610 F.2d 384, 389 & nn. 12-15 (6th Cir.1979). Plaintiff was entitled to 10 days to respond unless the time was shortened for cause
 
 
 [11]
 The District Court did not specify with respect to the Blount County Sheriff's Dep't defendants whether it was granting their motion to dismiss or alternatively their motion for summary judgment. We have already held that plaintiff's complaint does state a claim upon which relief can be granted; hence, dismissal under Rule 12(b)(6) would be error. In its memorandum, however, in discussing plaintiff's treatment by the defendants at the Blount County Jail, the District Court gives some indication that it considered defendants' affidavits in issuing its order. Rule 12(b) provides that "[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." See Hildebrand v. Board of Trustees of Michigan State Univ., 607 F.2d 705, 709-10 (6th Cir.1979). Therefore, we treat the District Court's order as having granted the Blount County Sheriff's Dep't defendants' motion under Rule 56
 
 
 [12]
 We note that Stinnett did not deny in her affidavit having contact with the other defendants during the time that these events were allegedly taking place
 
 
 [13]
 She does not appear to contest that the state court had personal jurisdiction over her by virtue of her appearance at the hearing. "Where the defendant has appeared in the original action, ... [d]efense to an adverse judgment on the basis of the failure of the rendering court to obtain jurisdiction of the person is ... foreclosed, unless the peculiar law of the state in which the judgment was rendered would honor such a collateral attack." Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 153 (5th Cir.1974). Although the Texas Rules of Civil Procedure allow special appearances to challenge jurisdiction, failure to follow the specific requirements of the applicable rule renders every noncomplying appearance a general one. Abramowitz v. Miller, 649 S.W.2d 339, 342 (Tex.App.1983)
 
 
 [14]
 The PKPA defines "home state" as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months.... Periods of temporary absence of any such persons are counted as part of the six-month ... period." 28 U.S.C. Sec. 1738A(b)(4). Plaintiff moved with her children to Tennessee in January 1983. The "time involved" would be Sept. 2, 1983, when Stephen filed his petition with the Texas court. Cf. DiRuggiero, supra. If, as plaintiff contends, she only sent the children to Texas initially for a visit, that period would not interrupt the running of the six months under Sec. 1738A(b)(4). However, in her affidavit in support of defendants' motion for summary judgment, Charlotte Hooks contends that plaintiff called requesting that defendants take the children permanently, because plaintiff could no longer handle caring for them. As to the time the children were in Texas between plaintiff's arrest in Tennessee and the time that they were returned to her, although we need not resolve this question, we have little doubt that, if the children were wrongfully taken, this period would not affect the status of Tennessee as their home state of residence under the PKPA and UCCJA
 
 
 [15]
 In her affidavit accompanying counsel's response to this Court's order to show cause, plaintiff alleges that she objected to the Texas court's jurisdiction at the outset of the October 11 hearing, but was told by the judge that her presence gave the court jurisdiction under Texas law. While the court's ruling may have been correct as to personal jurisdiction over her, see note 13 supra, it would not appear to be correct with respect to the court's subject matter jurisdiction
 
 
 [16]
 It would appear that she may do so either by direct review or mandamus. See Kollman Stone Industries, Inc. v. Keller, 574 S.W.2d 249, 251 & n. 4 (Tex.Civ.App.1978)