787 F.2d 403
 Mary Ann FITZGERALD and Ernest Fitzgerald, Appellants,
v.
Louis WILLIAMSON, Michael Dye, Theodore T. Kellogg, Kim D.
Edgar, Debra Mugel, Warren Swanson and James
Moody, Appellees.
 No. 85-1134.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 17, 1985.
Decided March 26, 1986.
 
 Ross Harry Briggs, St. Louis, Mo., for appellants.
 Jerry L. Short, Asst. Atty. Gen., Jefferson City, Mo., for appellees.
 Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 ROSS, Circuit Judge.
 
 
 1
 Mary and Ernest Fitzgerald seek to recover monetary damages from seven employees of the Missouri Division of Family Services (DFS) under 42 U.S.C. Sec. 1983 and a pendent state law tort claim. They maintain that the defendants violated their due process rights by intentionally terminating the parental relationship between themselves and their daughter, Wisa Rowland, while Wisa was in the DFS's custody.
 
 
 2
 The seven defendants were sued in their individual capacities. Four of the defendants, Michael Dye, Theodore Kellogg, Debra Mugel, and Kim Edgar, are caseworkers for the Dent County DFS, and one defendant, Warren Swanson, is a hearing officer for the DFS. The remaining two defendants, Louis Williamson and James Moody, are the directors of the Dent County DFS and the State of Missouri DFS, respectively.
 
 
 3
 The district court, 601 F.Supp. 92, granted the defendants' motion for summary judgment on the basis that the defendants' conduct, as alleged in plaintiffs' complaint, did not violate the Fitzgeralds' due process rights. We agree with the district court's decision and, accordingly, affirm the court's judgment.
 
 FACTS[1]
 
 4
 The DFS is a state agency involved in family matters. It acquired legal custody over Wisa through Missouri's juvenile court system after Wisa ran away from the Fitzgeralds' home and accused Ernest (who is actually her stepfather) of physically assaulting her.
 
 
 5
 The events leading to the DFS's acquisition of custody over Wisa began on November 19, 1980. On that date, Wisa ran away from the Fitzgeralds' home in Salem, Missouri,[2] at the age of fourteen. Later that same day, she appeared at the Salem Police Department and reported that Ernest had struck her with a tennis shoe on November 18th. In compliance with Missouri law, the police summoned Michael Dye, a caseworker for the Dent County DFS.[3] After conversing with Wisa and the police, Dye asked the juvenile court to initiate child protection proceedings.
 
 
 6
 During the evening of November 19th, Dye met with the Fitzgeralds. They denied that Wisa had been spanked or punished on November 18th. In addition, Mary informed Dye that she believed that her daughter was emotionally unstable and possibly suicidal and asked Dye to obtain a psychological evaluation of Wisa. Complaint, p 16.
 
 
 7
 Dye believed that the Fitzgeralds were lying. His conclusion was based upon his unproven suspicion that the Fitzgeralds had abused other children on prior occasions. He also assumed that the Fitzgeralds were deliberately refusing to tell the truth because they feared that the DFS would remove the Fitzgeralds' remaining three children from their home. Complaint, p 17.
 
 
 8
 Two days later, on November 21, 1980, the juvenile court entered an ex parte order making Wisa a temporary ward of the court and placing legal custody with the Dent County DFS, "pending a hearing upon a petition to be filed, for the reason that said juvenile alleges her stepfather has physically abused her by pulling her hair and by hitting her on the back with a shoe and she is afraid to go home." In re Wisa A. Rowland, No. JU380-25J (Circuit Court of Dent County, Missouri, Juvenile Division, Nov. 21, 1980). Roger Barr, a juvenile officer of Dent County, had supplied the juvenile court with the above reasons for juvenile court intervention in Wisa's case. He filed a petition on November 25, 1980, setting forth the same reasons for exercising juvenile court jurisdiction over Wisa. The juvenile court, however, never held a hearing on this petition.
 
 
 9
 Later, in December of 1980, Dye mailed the Fitzgeralds a document entitled "Written Service Agreement Between Ernest and Mary Fitzgerald and The Division of Family Services." Dye instructed the Fitzgeralds that the parties would have to reach a mutually acceptable agreement before Wisa could be returned home. The agreement stated, in relevant part, that the Fitzgeralds would: a) visit once a month with their caseworker, Michael Dye, b) visit monthly with Wisa at the Dent County DFS office, c) attend counseling as often as was prescribed by a DFS counselor, and d) refrain from punishing Wisa or any other children by using a foreign object. Complaint, p 21.
 
 
 10
 A few days later, the Fitzgeralds met with Dye at his office and informed him that they would not sign the written service agreement. They feared that any allegation of a violation of a signed agreement would result in the removal of their remaining children from their home. However, they voluntarily agreed to attend counseling sessions with a DFS counselor and again asked Dye to have Wisa evaluated by a psychologist. Complaint, p 22.
 
 
 11
 Dye complied with the Fitzgeralds' request for a psychological evaluation sometime in December of 1980 by arranging for Wisa to be evaluated by a Dr. William Cone. After the evaluation was completed, Dr. Cone reported that he believed Wisa was truthful in her allegations of child abuse, that he felt there was more abuse in the Fitzgerald family than reported, and that he did not consider it advisable to return Wisa home or to force her to visit the Fitzgeralds on a weekly basis. Complaint, p 24. After receiving Dr. Cone's report, Dye allowed the Fitzgeralds to visit Wisa only once a month, rather than on a weekly basis.
 
 
 12
 In June of 1981, the Fitzgeralds retained counsel and filed a request for a detention hearing. This request was filed pursuant to MO.REV.STAT. Sec. 211.251(2), which provides that parents "of a child committed to the custody of an * * * agency may, at any time, petition the court for a modification of the order of custody." A date for a hearing on this motion was set but the hearing was postponed with the Fitzgeralds' consent. Instead, the Fitzgeralds met with Dye and Roger Barr to discuss whether Wisa's foster parent, Brenda Paskon, should be made Wisa's guardian. The Fitzgeralds considered this option because they believed that the return of their daughter to their home would present a danger to their children and themselves. Complaint, p 27 and 28. The juvenile court docket sheet reflects that the postponed matter was also "called and passed" in July and August of 1981.
 
 
 13
 Subsequently, in September of 1981, the Fitzgeralds informed the juvenile court and Dye that they wanted all guardianship proceedings stopped. At this time, the Fitzgeralds concluded that the defendants' true objective was to permanently sever their parental relationship with Wisa and create such a relationship between Brenda Paskon and Wisa. Thus, they demanded that a new foster parent be obtained for Wisa, or alternatively, that Wisa be placed in an institutional home for children. Complaint, p 29. The defendants responded by ignoring the demand and permitting Wisa to move with Brenda Paskon from Dent County to Jefferson City, Missouri, and thereafter, to Sedalia, Missouri.[4] The intended consequence of these actions, according to the Fitzgeralds, was to isolate them from their daughter and to encourage the development of a familial relationship between the foster parent and Wisa.
 
 
 14
 In April of 1983, the Fitzgeralds requested a hearing before the DFS to review Wisa's custody with the DFS and her placement with Brenda Paskon. The DFS hearing officer, Warren Swanson, refused to hold a hearing.
 
 
 15
 Thereafter, on June 14, 1983, Roger Barr filed a motion for an "Eighteen Month Dispositional Hearing" with the juvenile court in order that "permanent custodial planning" could be made for Wisa. See MO.REV.STAT. Sec. 210.720 (juvenile court is required to hold a "dispositional hearing within eighteen months of initial placement"). A date for the hearing was set, but the Fitzgeralds asked for a continuance because Mary had an appointment with a doctor that day. Later, on July 7, 1983, the Fitzgeralds signed consent forms waiving the eighteen month dispositional hearing and making Wisa a temporary ward of the juvenile court "for the reason that the said child refuses to return home." On the next day, Barr filed an amended petition and the juvenile court entered an order making Wisa a temporary ward of the court and placing legal custody with the DFS. The reason given for the court's order was that "the [home] environment of Wisa * * * is injurious to her welfare." In re Wisa A. Rowland, supra (July 8, 1983 order).
 
 
 16
 The Fitzgeralds then appealed this judgment to the Missouri Court of Appeals. The appeal was withdrawn when, on December 8, 1983, the juvenile court amended its earlier judgment in response to a stipulation entered into between the DFS and the Fitzgeralds. Pursuant to the stipulation, the reason for Wisa being a ward of the court was changed to: "child has disobeyed the reasonable and lawful directions of her parents." In re Wisa A. Rowland, supra (Dec. 8, 1983 order). In addition, the judgment called for the reunification of Wisa with her parents within 30 days. Then, on January 3, 1984, the juvenile court entered an order terminating juvenile court jurisdiction over Wisa because she "had reached the age of seventeen, and is no longer in need of the care and treatment which this Court may provide." In re Wisa A. Rowland, supra (Jan. 3, 1984 order).
 
 
 17
 Following the last two juvenile court orders, Wisa refused to return to the Fitzgeralds' home, preferring instead to remain with Brenda Paskon. The juvenile court was unable to assist the Fitzgeralds in obtaining custody of Wisa because, at the age of seventeen, she was beyond the juvenile court's jurisdiction.
 
 
 18
 The Fitzgeralds then filed this action. Their complaint claimed that they were deprived of their "right to the care, custody and upbringing of their child" in violation of their substantive and procedural due process rights. In addition, their complaint asserted that the "defendants' inducement and enticement of Wisa Rowland to avoid the lawful custody of plaintiffs constitutes the common law tort of unlawful interference with the custody of a child."
 
 
 19
 As developed by the briefs, the graveman of the Fitzgeralds' claim is that the defendants violated their substantive due process rights by intentionally terminating their parental relationship with Wisa. The Fitzgeralds maintain that the defendants brought about this termination by: 1) obtaining a psychological evaluation of Wisa from Dr. Cone for the purpose of amassing evidence that the Fitzgeralds were guilty of child abuse, and 2) promoting a close relationship between Wisa and her foster parent and discouraging such a relationship between Wisa and the Fitzgeralds by a) reducing the Fitzgeralds' visitation rights, and b) permitting Wisa to move with her foster parent to distant cities. In addition, the Fitzgeralds claim that the defendants violated their procedural due process rights by denying them an administrative hearing on the decision to place Wisa with Brenda Paskon and by reducing their visitation rights without juvenile court approval.
 
 
 20
 Relying primarily on the Seventh Circuit's decision in Ellis v. Hamilton, 669 F.2d 510 (7th Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982), the district court granted the defendants' motion for summary judgment. The court reasoned that the Fitzgeralds' liberty interest in the care, custody, and management of their daughter was not deprived without due process of law because, in their dealings with Wisa, the defendants "substantially complied with the juvenile court procedures." Slip op. at 8. Having dismissed the federal claim, the court decided to dismiss the pendent state law claim as well. See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966).
 
 DISCUSSION
 1. Substantive Due Process
 
 21
 This court has previously recognized that "[p]arents have a fundamental 'liberty interest' in the care, custody, and management of their children." Ruffalo v. Civiletti, 702 F.2d 710, 715 (8th Cir.1983) (citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "That [the Fitzgeralds may have] been deprived of a constitutionally protected right, of course, does not answer the whole question of whether [they have] a claim for relief. [They] must also show that [they were] deprived of the right without due process of law." Id.
 
 
 22
 Procedurally, the juvenile court proceedings in connection with the DFS's custody of Wisa were not entirely in compliance with Missouri's statutory mandates.[5] The DFS, however, is not a part of the judicial branch of the State of Missouri and the Fitzgeralds "do not attempt to place liability upon the defendants for the errors of the juvenile court or its personnel." Appellants Brief at 12. Nor do the Fitzgeralds contend that the procedures provided under Missouri's custody statutes are constitutionally inadequate. Instead, the Fitzgeralds have chosen to rely on the substantive component of the Due Process Clause to support their claim that the defendants unconstitutionally terminated their parental relationship with Wisa.
 
 
 23
 The substantive component of the Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them, * * * [and thereby] serves to prevent governmental power from being 'used for purposes of oppression.' " Daniels v. Williams, --- U.S. ----, ----, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 277, 59 U.S. 272, 277, 15 L.Ed. 372 (1856)). Because "[d]ue process of law, as a historic and generative principle, precludes defining," there are no precise standards for determining what governmental actions are proscribed by substantive due process. Rochin v. California, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). Nevertheless, we are convinced that the defendants' conduct in this case does not rise to the level of a substantive due process violation.
 
 
 24
 Our conclusion follows from the fact that it does not shock our conscience or otherwise offend our judicial notions of fairness to hear that caseworkers responsible for an allegedly abused child arranged for the child to be examined by a psychologist and, after receiving confirmation of child abuse, reduced the parents' visitation rights and permitted the child to remain with her foster parent when the foster parent moved out of the parents' geographical area. Because this case is before us on the district court's grant of summary judgment, we must take it as true that the defendants wanted to terminate the Fitzgeralds' relationship with their daughter and committed the above acts with this goal in mind. That fact, however, does not alter our conclusion that no substantive due process violation appears on the facts in this case.
 
 
 25
 We add that the cases cited by the Fitzgeralds in support of their substantive due process claim are easily distinguishable. The cited cases deal either with conduct inherently different from the type of conduct involved in this case,[6] or with claims based primarily on the procedural component of the Due Process Clause.[7]
 
 2. Procedural Due Process
 
 26
 The Fitzgeralds' procedural due process claim is based on the defendants' failure to provide the Fitzgeralds with a hearing prior to reducing their periodic visits with Wisa or prior to permitting Wisa to remain with her DFS-selected foster parent. We recognize the possibility that visitation and placement decisions may be subject to due process scrutiny, as such decisions may infringe upon a parent's interest in the "care, custody, and management of their child." Santosky v. Kramer, supra, 455 U.S. at 753, 102 S.Ct. at 1394-95. See Ruffalo v. Civiletti, supra, 702 F.2d at 715 (court found it unnecessary to determine whether a parent's visitation rights are constitutionally protected); Wise v. Bravo, 666 F.2d 1328, 1332-33 & 1338 (10th Cir.1981) (invasion of father's visitation rights by police officers too insubstantial in duration to rise to constitutional level). Regardless, Missouri law provides adequate protection for the parental interests implicated by such decisions, as parents may petition the juvenile court for modification of custody orders at any time. MO.ANN.STAT. Sec. 211.251(2). See Bohn v. County of Dakota, Minnesota, 772 F.2d 1433, 1438-39 (8th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986) (ex post procedures for review of agencies' child abuse finding found constitutionally adequate). Thus, we conclude that the Fitzgeralds' procedural due process rights were not violated by the defendants' visitation and placement decisions.
 
 
 27
 As a final comment relating to both the substantive and procedural due process claims, we note that the Fitzgeralds had at least two opportunities to appear before the juvenile court. On both occasions, the Fitzgeralds waived their right to present their case to the juvenile court and acquiesed in the DFS's continued custody of Wisa.
 
 
 28
 Because the facts do not support the Fitzgeralds' due process claim, we affirm the district court's judgment.
 
 
 
 [1]
 The facts in this case are derived from the Fitzgeralds' complaint and from an authenticated and certified copy of Wisa's juvenile court record. The latter source was supplied by the defendants with their motion for summary judgment. We note that "[b]ecause the district court disposed of this case by way of summary judgment, we [must] review the facts in the light most favorable to [the Fitzgeralds]." Anselmo v. Manufacturers Life Ins. Co., 771 F.2d 417, 418 n. 1 (8th Cir.1985)
 
 
 [2]
 The Fitzgeralds' complaint states that their current home is in Licking, Missouri, but it does not state where they lived at the time Wisa ran away. From the juvenile court records, it appears that the Fitzgeralds lived in Salem, Missouri, at the time Wisa ran away
 
 
 [3]
 Under Missouri law, "[w]hen any * * * law enforcement official * * * has reasonable cause to suspect that a child has been or may be subjected to abuse", the official has a duty to report the matter to the DFS. MO.ANN.STAT. Sec. 210.115(1)
 
 
 [4]
 Kim Edgar gave permission for the move to Jefferson City in December of 1982; Edgar and Debra Mugel both gave permission for the move to Sedalia in June of 1983
 
 
 [5]
 For example, the juvenile court never held an evidentiary hearing on the petition filed by Roger Barr on November 25, 1980. Also, the motion for an eighteen month dispositional hearing filed by Barr was not made until thirty-three months after Wisa had entered the DFS's custody
 
 
 [6]
 See Mattis v. Schnarr, 502 F.2d 588 (8th Cir.1974) (father sued police officers for fatally shooting his son)
 
 
 [7]
 See Ruffalo v. Civiletti, 702 F.2d 710 (8th Cir.1983) (without notice to the mother, officials included her nine-year old son in the Federal Witness Protection Program); Morrison v. Jones, 607 F.2d 1269 (9th Cir.1979) (without notice to the mother, county officials sent her son to Germany to live with his grandparents); Duchesne v. Sugarman, 566 F.2d 817 (2d Cir.1977) (welfare officials acquired and retained custody of mother's two children for three years without a hearing or court order)