886 F.2d 1064
 Carrie LUX, by her natural guardian, Jack LUX, Appellant,
v.
Sharon HANSEN, and her employer, West River Mental Health
Center, Inc., a South Dakota corporation; Charles
Lord, M.D. P.C., a South Dakota
corporation, Appellees.
 No. 88-5472.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1989.
Decided Oct. 10, 1989.
 
 Andrew B. Reid, Hot Springs, S.D., for appellant.
 Robert L. Lewis, Rapid City, S.D., and Timothy M. Gebhart, Sioux Falls, S.D., for appellees.
 Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LARSON, Senior District Judge.*
 WOLLMAN, Circuit Judge.
 
 
 1
 Carrie Lux, by her natural guardian, Jack Lux, appeals the district court's[1] grant of summary judgment in favor of Sharon Hansen and her employers, West River Mental Health Center, Inc. (West River) and Charles Lord, M.D. We affirm.
 
 I. BACKGROUND
 
 2
 In 1980, Jack and Heather Lux were divorced. Custody of their three-year-old daughter, Carrie, was awarded to Heather, with Jack receiving visitation rights. In 1983, Carrie's pre-school teacher suspected possible child abuse or trauma after a report that Carrie had apparently been masturbating in the classroom. The teacher recommended that Heather consult with a social worker employed at the South Dakota Department of Social Services (DSS). The social worker referred Carrie to appellee Sharon Hansen, a mental health counselor employed by the West River Mental Health Center.
 
 
 3
 Hansen saw Carrie for counseling sessions approximately weekly from February 1983 through November 1984. About a month after the counseling had started, Hansen told Heather that based on information from the counseling sessions, she suspected Carrie had been abused sexually. Carrie's uncles were investigated in connection with the suspected sexual abuse but were exonerated after submitting to polygraph examinations.
 
 
 4
 In October 1983, Hansen, who holds a master's degree in mental health nursing, sought advice from Craig Black, a social worker with DSS. On October 26, 1983, Hansen and Black questioned Carrie at length about sexual abuse during a two hour forty minute session. Carrie cried and evaded their questions. After being reassured that no one would be killed, hurt, or sent to jail, Carrie stated, "You're right, it was my daddy, Jack." In the car on the way home, however, Carrie recanted the confession to her mother, saying that she had lied and that her father had never done anything to her. Heather related this information to Hansen, who believed that it was evidence of the denial stage of the therapy.
 
 
 5
 Beginning in December 1983, Carrie was placed in group therapy sessions with sexually abused children and subsequently related detailed descriptions of sexual abuse by her father. A physician who examined Carrie in January 1984, however, found no evidence of sexual penetration.
 
 
 6
 Black referred Carrie to Kathleen Peil, a certified social worker, who recommended that a dependency and neglect proceeding be brought against Jack and that no unsupervised visitations be allowed between Jack and Carrie. In April 1984, DSS filed a petition alleging that Carrie was a dependent and neglected child because she had been sexually abused by Jack. Two months later, Hansen began her employment with appellee Dr. Lord. She saw Carrie approximately eight times between June and November 1984. In December 1984, Carrie told Peil that her father had not molested her, and she again retracted the confession made during the October 26, 1983, session with Hansen and Black. Peil recommended family counseling for Carrie and her parents. In December 1984, Jack, Heather, and an attorney for Carrie stipulated that all parties would enter family therapy and that Jack would be allowed visitation rights under conditions and times set by the family therapist. As a result of this stipulation, the dependency and neglect proceedings were dismissed.
 
 
 7
 Carrie brought a section 1983 action and a state tort law negligence claim against the appellees, who moved for summary judgment. The district court, accepting in full the findings and recommendations of the magistrate,[2] granted the motion, holding that appellees were protected by qualified immunity on the civil rights claim and were afforded immunity from the state law negligence claim under S.D. Codified Laws Ann. Sec. 26-10-14.
 
 II. DISCUSSION
 A. The Section 1983 Claim
 
 8
 Carrie alleges that her due process and liberty rights were violated when she was separated from her father as a result of DSS's investigation and the subsequent dependency and neglect proceedings. She cites Fitzgerald v. Williamson, 787 F.2d 403 (8th Cir.1986), in which we recognized that " '[p]arents have a fundamental "liberty interest" in the care, custody, and management of their children.' " Id. at 407 (quoting Ruffalo v. Civiletti, 702 F.2d 710, 715 (8th Cir.1983)).
 
 
 9
 Hansen asserted the defense of qualified immunity as to the section 1983 claim. A government official is entitled to the defense of qualified immunity unless he has violated clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This protection of qualified immunity extends to private party defendants who act in joint participation with public officials. Watertown Equip. Co. v. Norwest Bank Watertown, 830 F.2d 1487, 1489-90 (8th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988).
 
 
 10
 Hansen contends that Myers v. Morris, 810 F.2d 1437 (8th Cir.), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), controls this case. In Myers, minor children and their guardians brought a section 1983 action against various state and county prosecutors, therapists, and law enforcement officers for the techniques they used to investigate suspected sexual abuse by parents. We held that because removing the children from their homes and placing them in temporary foster care did not violate any clearly established legal standards, the defendants were entitled to qualified immunity. Id. at 1461-63. We conclude that Hansen is entitled to that same immunity here. As we held in Myers, "the parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children." Id. at 1463.
 
 
 11
 We agree with the district court that Hansen had a reasonable suspicion that Jack was abusing Carrie. Hansen's involvement with Carrie came as a result of the referral from DSS, which in turn stemmed from Carrie's mother's report of possible child abuse. Carrie had confessed on one occasion that her father had abused her, and following group therapy sessions gave details of the abuse. Although the facts, especially when viewed in hindsight, lend themselves to alternative interpretations, they were sufficient to raise a reasonable suspicion that Carrie had been sexually abused by her father. Accordingly, we find no evidence of malice or improper motives that might defeat such immunity. See Doe v. Hennepin County, 858 F.2d 1325, 1329 (8th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3161, 104 L.Ed.2d 1023 (1989) (citing Myers, 810 F.2d at 1457).
 
 
 12
 Because no liability exists under the doctrine of respondeat superior, West River and Dr. Lord are also not liable under section 1983. Because there is no evidence of an employer's policy or custom upon which to predicate liability, nor evidence of failure to properly train or supervise employees, there is no other basis upon which West River or Dr. Lord could be held liable. City of Canton v. Harris, --- U.S. ----, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Monell v. Department of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Iskander v. Village of Forest Park, 690 F.2d 126 (7th Cir.1982).
 
 B. The Diversity/Pendent State Law Claim
 
 13
 Carrie next contends that S.D. Codified Laws Ann. Secs. 26-10-10 and 26-10-14 do not protect appellees from civil liability to Carrie. Sections 26-10-10 and 26-10-14 provide immunity for reporting child abuse if there is a good faith, reasonable cause to suspect neglect. Section 26-10-10 provides in pertinent part:
 
 
 14
 Any physician, * * * mental health professional, psychologist, * * * social worker, * * * [or] nurse, * * * having reasonable cause to suspect that a child under the age of eighteen years has been * * * neglected as defined in Sec. 26-8-6, * * * shall report or cause reports to be made * * *.
 
 
 15
 Section 26-8-6 defines neglect as including a child "[w]ho is subject to sexual abuse * * * by his parent [or] guardian * * *." Immunity is provided by section 26-10-14:
 
 
 16
 Anyone participating in good faith in the making of a report pursuant to Secs. 26-10-10 to 26-10-12, inclusive, * * * shall have immunity * * *, civil or criminal * * *. Immunity shall also extend in like manner * * * to any person who in good faith cooperates with * * * the department of social services in an investigation, placement or treatment plan. * * *
 
 
 17
 Carrie advances several reasons why these statutes do not apply to Hansen. First, she claims that the acts committed against her were not under the direction of the state or under a requirement of state law. We do not agree. We find that Hansen is entitled to claim immunity under section 26-10-14 because she is a mental health professional required to report under section 26-10-10 and she was cooperating with DSS, a state agency.
 
 
 18
 Second, Carrie contends that the statute covers the reporting but not investigation of suspected abuse. The plain language of the statute, however, indicates that it applies not only to reporting suspected child abuse, but also to any person who in good faith cooperates with DSS in an investigation.
 
 
 19
 Finally, Carrie contends that Hansen did not have the requisite good faith. She argues that Hansen has merely demonstrated a lack of bad faith and that a lack of bad faith is not the equivalent of good faith. However "good faith-bad faith" may be defined in the context of qualified immunity in a section 1983 action, see Little v. Walker, 552 F.2d 193, 197 n. 8 (7th Cir.1977), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978), Hansen acted in good faith within the meaning of that term as used in section 26-10-14. As indicated earlier, she had reasonable cause to suspect child abuse, and her investigation and treatment stemmed from concern that Carrie had been the victim of such abuse.
 
 
 20
 Accordingly, we conclude that section 26-10-14 grants Hansen immunity against civil tort liability. See Storch v. Silverman, 186 Cal.App.3d 671, 231 Cal.Rptr. 27 (1986); Krikorian v. Barry, 196 Cal.App.3d 1211, 242 Cal.Rptr. 312 (1987) rev. denied (providing immunity to professionals suspecting child abuse through application of similar California statute, Cal.Penal Code Secs. 11166(a) and 11172(a)). In reaching this conclusion, we have considered Carrie's contention that the holding in Montoya v. Bebensee, 761 P.2d 285 (Colo.App.1988), should be applied to this case. We conclude, however, that Hansen's actions fell far short of those that the Colorado court held might fall outside the ambit of the immunity afforded by the Colorado statute.
 
 
 21
 The district court's order is affirmed.
 
 
 
 *
 The HONORABLE EARL R. LARSON, United States Senior District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Richard H. Battey, United States District Judge for the District of South Dakota
 
 
 [2]
 The Honorable F. Thomas Parker, United States Magistrate for the District of South Dakota