Clifton William WELLER, III, Individually and as father and next friend of Clifton William Weller, IV, minor and Matthew Charles Weller, minor, Plaintiff–Appellant,

v.

DEPARTMENT OF SOCIAL SERVICES FOR the CITY OF BALTIMORE; Juvenile Services Administration, Department of Health and Mental Hygiene for the State of Maryland; James S. Becker, Individually and in his capacity as Special Assistant City Solicitor and Attorney for the Department of Social Service of Baltimore City; Benjamin Brown, Individually and in his capacity as City Solicitor for the City of Baltimore Law Department; Ruth Massinga, Individually and in her capacity as Secretary of the Department of Human Resources for the State of Maryland; Department of Human Resources for the State of Maryland; Frank Farrow, Individually and in his capacity as Executive Director of the Maryland Social Services Administration; George G. Musgrove, Individually and in his capacity as Director of the Baltimore City Department of Social Services; Dorothy Maxine Rosinski, Individually and in her capacity as Acting Chief, Child Protective Services Division, Baltimore City Department of Social Services; Dee Ann Ritterpusch, Individually and in her capacity as Social Worker and Case Worker, Child Protective Service Division, Baltimore City Department of Social Services; Beverly Williams, Individually and in her capacity as Social Worker and/or Supervisor, Child Protective Services Division, Baltimore City Department of Social Services; Carl Cobbs, Individually and in his capacity as Social Worker, Child Protective Service Division, Baltimore City Department of Social Services; Carl Smith, Individually and in his capacity as Social Worker and/or Supervisor, Child Protective Services Division, Baltimore City Department of Social Services; Michael McCausey, Individually and in his capacity as Division 1 Chief Child Protective Services Division, Baltimore City Department of Social Services; Herman Ambrose Cornish, Individually and in his capacity as Supervisor, Child Protective Services Division, Baltimore City Department of Social Services; Marie B. Morris, Individually and in her capacity as Extended Hours Staff Workers, Child Protective Services Division, Baltimore City Department of Social Services; Sheila Dennis, Individually and in her capacity as District Supervisor, Child Protective Services Division, Baltimore City Department of Social Services; Alvin Parks and Bonita Winder, Individually and in their capacity as Extended Hours Staff Workers, Child Protective Services Division, Baltimore City Department of Social Services; Lisa Young, Individually and in her capacity as Screening Staff Worker, Child Protective Services Division, Baltimore City Department of Social Services; Giselle Meeks, Individually and in her capacity as Social Services Administration Worker, Maryland Social Services Administration; Richard L. Hamilton, Individually and in his capacity as Acting Director of the Juvenile Services Administration Department of Health and Mental Hygiene for the State of Maryland; Marilyn Blimline, Esquire, Individually and in her capacity as Assistant City Solicitor and Attorney for the Department of Social Services of Baltimore City; Betty M. Matthews; Judity Carol Weller, Defendants–Appellees.

No. 89–3253.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1989.

Decided April 19, 1990.

As Amended April 24, 1990.

Mercedes Casado Samborsky (argued), Joppatowne, Md., for plaintiff-appellant.

Mark Davis (argued), Asst. Atty. Gen., Baltimore, Md. (J. Joseph Curran, Jr., Atty. Gen., Neal M. Janey, City Sol., William R.

Phelan, Jr., Sp. Sol., Baltimore, Md., on brief), for defendants-appellees.

Before CHAPMAN and WILKINS, Circuit Judges.

CHAPMAN, Circuit Judge:

The plaintiff/appellant, Clifton William Weller, appeals the dismissal of his suit for lack of subject matter jurisdiction. The district court dismissed the action sua sponte prior to service of process pursuant to Fed.R.Civ.P. 12(h)(3), for lack of federal jurisdiction. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

### INTRODUCTTON

Weller filed his pro se complaint[1] in federal district court against twenty-five defendants, including agencies of Maryland, employees of the State of Maryland and the City of Baltimore, and his ex-wife and mother-in-law. The complaint predicated jurisdiction on 28 U.S.C. §§ 1331 and 1343. It alleged a cause of action under 42 U.S.C. § 1983 and attempted to raise federal questions under the Social Security Act's provisions pertaining to child welfare, 42 U.S.C. § 601 *et seq.*, as well as under the due process and equal protection clauses of the federal constitution.

The allegations arise out of the defendants' apparent transfer of custody of Weller's son, Matthew, from Weller's custody in Baltimore to Matthew's grandmother near Baltimore, and ultimately to Matthew's mother in Louisiana.[2] Defendants are alleged to have interfered with Weller's custody of Matthew on two occasions: first, in March 1986, and again in July 1986. Weller alleges that the transfer of custody was wrongful because it was done without the hearing required by state law, and without other procedural safeguards. He is suing for monetary damages[3] to compensate both Matthew and himself for harm allegedly caused by the transfer in custody.[4]

Weller's complaint, aptly termed "prolix" by the district court, was dismissed before any of the defendants were served.[5] On appeal, Weller contends that the district court erroneously relied on *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and that the complaint raises federal questions, particularly under § 1983, because it alleges a violation of due process.

We agree with the district court that it lacked jurisdiction over the vast majority of the claims; however, we find that the complaint does allege a violation of procedural due process, which may not be dismissed at this preliminary stage of the proceedings.

## II.

### MISCELLANEOUS CLAIMS

Although the legal theories within Weller's pro se complaint are difficult to discern, courts traditionally view civil rights complaints, particularly those brought pro se, with "special judicial solicitude." *See e.g., Harrison v. U.S. Postal Service*, 840 F.2d 1149, 1152 (4th Cir.1988); *Gordon v.*

---

1. Weller obtained counsel for this appeal.

2. Weller filed suit individually and on behalf of two sons, Clifton Weller, IV, and Matthew. Clifton is no longer a minor on whose behalf his father is entitled to bring suit, and there are no allegations to support a claim that Weller was deprived of the custody of Clifton; therefore this appeal concerns only Weller and Matthew.

3. Although other ambiguous requests for relief are suggested within the prolix complaint, the only requests for relief which could conceivably have merit are those for monetary damages.

4. Alleged injuries to Matthew include 1) the separation from his father and older brother, 2) physical assault by Matthew's grandmother, 3) lack of school attendance, 4) psychological trauma, and 5) physical and emotional neglect.

5. Since the complaint was dismissed prior to service of process, counsel for appellees represent only the Department of Social Services for the City of Baltimore (BCDSS), the Department of Human Resources for the State of Maryland, the Juvenile Services Administration—Department of Health and Mental Hygiene for the State of Maryland (JSA), and Benjamin L. Brown.

*Leeke,* 574 F.2d 1147, 1151 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). In truth, even a solicitous examination of the allegations reveals little on which federal subject matter jurisdiction may be based.

■ For example, although Weller cites the provisions of the Social Security Act dealing with Aid to Families With Dependent Children, 42 U.S.C. § 601 *et seq.,* there are no express allegations within the complaint to suggest any violation of those statutes. In fact, it is plain from the complaint that Weller's children were not at any time in foster care, contradicting even implied allegations of violations of the statutes. Federal jurisdiction may not be premised on the mere citation of federal statutes.

■ Weller's claim of sex-based discrimination fails for identical reasons; his complaint fails to allege anything that even remotely suggests a factual basis for the claim. While pro se complaints may "represent the work of an untutored hand requiring special judicial solicitude," a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir.1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). The "special judicial solicitude" with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.

## III.

## DUE PROCESS CLAIMS

■ Plaintiff attempts to characterize the majority of his claims as alleging violations of both substantive and procedural due process. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In order to rely on the due process clause, Weller must have a protectible interest. In this case, Weller clearly does have a protectible liberty interest in the care and custody of his children. However, other asserted liberty interests are not among those protected by the due process clause. As discussed below, with one exception, Weller's claims lack substance and legal support.

### A. *Substantive Due Process*

■ The substantive component of the Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). Although Weller relies on this component of due process, we believe this reliance to be misplaced.[6] "Because '[d]ue process of law, as a historic and generative principle, precludes defining,' there are no precise standards for determining what governmental actions are proscribed by substantive due process." *Fitzgerald v. Williamson,* 787 F.2d 403, 408 (8th Cir.1986) (quoting *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952)). In this case, we do not believe that the defendants' alleged conduct rises to the level of a substantive due process violation. It does not shock the conscience to hear that defendants removed a child in emergency action from the custody of a parent suspected of abusing him, based upon some evidence of child abuse.[7] Likewise, defendants' further conduct, in transferring custody of Matthew not to a stranger, but to

---

**6.** On appeal, counsel for Weller asserts that BCDSS and JSA "violated Mr. Weller's and Matthew's substantive due process rights by denying them a hearing, an investigation of the complaint and a medical examination of Matthew before taking Matthew away from Mr. Weller." We note that, in general, such claims are more properly asserted under the procedural component of due process.

**7.** Weller admittedly struck Matthew with a belt, but denies abusing him. The complaint also suggests that Weller was alleged to have abused Matthew by striking him with his fists (paragraph 32).

his grandmother with whom he had spent virtually every weekend, and thereafter to his natural mother, is not so shocking as to be a violation of substantive due process. Substantive due process does not categorically bar the government from altering parental custody rights.

■ If Weller is seeking relief on the basis that the State harmed Matthew by failing to protect him from his mother or grandmother, no due process claim exists. In *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 109 S.Ct. 998, the Supreme Court held that a State's failure to protect an individual against private violence does not violate substantive due process rights, because the State has no duty to provide its members with adequate protective services. That case involved a tragic situation where a child, returned to his father's custody by a state agency, was brutally beaten by the father and severely brain damaged. Although Weller attempts to distinguish *DeShaney* on the ground that BCDSS created the situation in which Matthew was allegedly injured by transferring custody to his grandmother and then to his mother, we agree with the district court that *DeShaney* is applicable to the extent that Maryland had no duty to provide Matthew with protective services in this case. As in *DeShaney*, the transfer of custody did not make the State "the permanent guarantor" of Matthew's safety. *Id.* 109 S.Ct. at 1006. Neither the mother's home nor the grandmother's home was operated by the State or its agents. Any harm that Matthew suffered at the hands of his mother or his grandmother was not inflicted by the State. We recently held that harm suffered by a child at the hands of his foster parents is not harm inflicted by state agents. *See Milburn v. Anne Arundel County Dep't of Social Servs.*, 871 F.2d 474 (4th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 148, 107 L.Ed.2d 106 (1989). It is even more clear that harm suffered by a child in the custody of a parent or grandparent is not harm inflicted by the State. Therefore, the complaint fails to assert federal jurisdiction under the substantive component of the due process clause.

B. *Procedural Due Process*

■ Similarly, most of the allegations fail to raise issues of procedural due process. Some allegations suggest that Weller is seeking relief which would require BCDSS to comply with state laws, such as those requiring certain investigative procedures to be followed prior to removing a child from a home to prevent child abuse.[8] If Weller is seeking compliance with state law, this is not the proper forum. Even if BCDSS did violate state law, it is well settled that violations of state law cannot provide the basis for a due process claim. *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988). Weller has no property or liberty interest in the specific investigative procedures which he contends were neglected; therefore no due process claim can rest upon the state's failure to conduct them. *See Doe v. Hennepin County*, 858 F.2d 1325, 1328 (8th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 3161, 104 L.Ed.2d 1023 (1989). While the State's requirements of certain investigative procedures are no doubt intended to provide a court with the best available evidence in cases of suspected abuse, the due process clause does not itself dictate the procedures for gathering such evidence.

■ Weller also complains that inadequate procedures exist under which he could defend his reputation against allegations of child abuse. Although in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that no protectible liberty interest was damaged by the publication of the arrest of a shoplifter, it is less clear that there is no protectible liberty interest in one's reputation as a child abuser. *See Bohn v. County of Dakota*, 772 F.2d 1433 (8th Cir.1985), *cert. denied*, 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986). In *Bohn*, the Eighth Circuit relied on *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27

---

8. Both an investigation of a complaint of child abuse and a medical examination of a child suspected of abuse are apparently required under state law.

L.Ed.2d 515 (1971), and distinguished *Paul v. Davis* in holding that parents had a protectible interest in their reputations when child abuse is involved, based on the protectible interests in family integrity. The Court ruled that the stigma of reported child abuse as well as a finding of abuse "erode[s] the family's solidarity internally and impair[s] the family's ability to function in the community." *Bohn,* 772 F.2d at 1436 n. 4. The issue need not be decided in this case, because Weller's complaint reveals that he attended a hearing at which the BCDSS petitioned for shelter care based on allegations of child abuse (paragraph 63). Therefore, it appears on the face of the complaint that Weller received any process due to him.

■ Weller alleges that the State interfered with his right to custody of Matthew on two separate occasions: first, in March of 1986, and again in July of 1986. With respect to events in July, the complaint reveals that *the State* did not deprive him of his liberty interest in the care, custody, and management of Matthew, because he voluntarily surrendered his son to BCDSS. If one voluntarily surrenders a liberty interest to the State, there has been no "deprivation" of that interest by the State, and no due process violation. *See Stone v. University of Maryland Medical System Corp.,* 855 F.2d 167, 172–3 (4th Cir.1988). Furthermore, the complaint suggests a waiver of due process in paragraph 49, where Weller states that he "did not want to wait thirty days for an adjudicatory hearing with such serious allegations pending."

■ The complaint alleges that the defendants first deprived Weller of his custody of Matthew in March 1986, by transferring custody to Matthew's grandmother and then to his mother without a prior hearing. However, the allegations clearly reveal that the defendants' reason for such transfer was their suspicion that Weller was physically abusing Matthew. Due process does not mandate a prior hearing in cases where emergency action may be needed to protect a child. *See Donald v. Polk County,* 836 F.2d 376, 380–1 (7th Cir. 1988); *Doe v. Hennepin County,* 858 F.2d at 1329; *Duchesne v. Sugarman,* 566 F.2d 817, 825–26 (2nd Cir.1977). "However, in those 'extra-ordinary situations' where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed." *Hooks v. Hooks,* 771 F.2d 935, 942 (6th Cir.1985) (quoting *Duchesne v. Sugarman,* 566 F.2d 817, 826 (2d Cir. 1977)).

■ If followed, Maryland's custody statutes may well be constitutionally adequate, since they provide for a hearing prior to a change in custody, or shortly after the emergency removal of a child. Md.Fam.Law Code Ann. §§ 5–906, 9–101, 9–204, 9–205 (1984); Md.Cts. & Jud.Proc. Code Ann. § 3–801 *et seq.* (1984). However, Weller asserts that the defendants completely denied him a hearing to determine whether the transfer of custody was warranted, so that there was no judicial ratification of the State's emergency action. Weller also alleges BCDSS workers Beverly Williams, Carl Smith, and Dee Ann Ritterpusch ignored his requests for such a hearing. (paragraph 33).

■ We find that such allegations, if proven, would rise to the level of a due process violation. The defendants argue that Weller could have invoked the power of the juvenile court to issue a remedial order on his behalf, and assert that other jurisdictions have held that similar post-deprivation procedural safeguards eliminate due process concerns. It does not appear to this Court that the cited procedural statute and rule could have been invoked by plaintiff to obtain an appropriate post-deprivation hearing.[9] Even if such a

9. Md.Cts. & Jud.Proc.Code Ann. § 3–827 (Supp. 1988) authorizes a court to make "an appropriate order directing, restraining, or otherwise controlling the conduct of a person who is properly before the court." Md. Rule 910e(1) provides that application for such an order may be made by any person with an interest in the child. Appellees have not cited any case in which these provisions were used to institute an adjudicatory hearing to change custody. A re-

remedy were technically available, we disagree with defendants' conclusion that it satisfies due process. Likewise, we are not persuaded by defendants' argument that the availability of a tort action against the state employees cures the otherwise defective procedural due process. *Ex post* procedures are generally disapproved where the only remedy is an independent tort action, *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436–37, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). We are not faced with a situation like that in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in which the Supreme Court held that procedural due process concerns implicated by the deprivation of an inmate's $23.50 hobby kit were satisfied by the availability of a post-deprivation tort remedy. The liberty interest implicated in this case is of far greater import, and we find a state tort remedy particularly inappropriate here.

The cases cited for the proposition that the mere availability of other post-deprivation procedures satisfies due process are distinguishable. For example, in *Fitzgerald v. Williamson*, 787 F.2d 403 (8th Cir. 1986), a state agency *had* acquired legal custody of a child. In that case, agency employees were sued for their failure to provide the parents with a hearing prior to reducing the parent's periodic visits with the daughter, or prior to permitting the child to remain with her agency-selected foster parents. The court there determined that Missouri law, which allowed a petition for modification of custody, provided adequate due process protection for the parental interests implicated by decisions concerning visitation and placement decisions. However, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Unlike *Fitzgerald*, Weller alleges the agency failed to obtain legal custody of Matthew. Although due process may be satisfied by a procedural remedy such as that in *Fitzger-*

*ald* when visitation and placement decisions are at stake, we believe that the greater liberty interest inherent in the custody of one's child requires something more.

Other cases cited are similarly distinguishable. In *Ellis v. Hamilton*, 669 F.2d 510 (7th Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982), the defendants obtained legal custody in a hearing held to terminate parental rights. Weller undoubtedly has a stronger claim of a liberty interest in the custody of his child than did the "grandparents" in *Ellis*. Likewise, in *Doe v. Hennipin County, supra*, the juvenile court conducted a hearing one day after the state agency took emergency action in removing children from the home.

We are not without guidance in determining what additional process is due. In determining the particular dictates of due process, the Supreme Court has established several factors to be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■■■ It is clear that the private, fundamental liberty interest involved in retaining the custody of one's child and the integrity of one's family is of the greatest importance. *See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). Moreover, the risk of an erroneous deprivation through the procedures used in this case is unacceptable. As noted

view of the case law suggests that appellees' proposed application of these statutory provi-

sions would be at the very least, unique.

by the Second Circuit in *Duchesne v. Sugarman,* 566 F.2d at 828–29 n. 26, a similar case in which a mother sought money damages under § 1983:

> [T]he "fact specific" nature of the determination of the fitness of a parent presents a grave risk of erroneous deprivation when the action of the state is not promptly reviewed.... [T]he administrative and fiscal burden to the state can be of no moment when state law itself apparently requires a court order and prompt judicial review of emergency action.

Weller alleges that the defendants ignored the procedures under state law which require judicial review of an emergency removal of a child from his parent's custody. The fact that Weller voluntarily surrendered his liberty interest in Matthew's custody less than four months later may go to the element of damages, but does not eliminate the initial due process violation in this case.

In *Duchesne v. Sugarman,* Ms. Pauline Perez brought an action for the unlawful and unconstitutional assumption and retention of the custody of her two minor children without her consent or a hearing or court order. Her children were taken by the New York City's Bureau of Child Welfare (B.C.W.) and were put in emergency placements when she was unable to care for them because of her admission to Bellevue Hospital. Upon her release from Bellevue, less than a week after her children were taken, Perez requested their return from a B.C.W. caseworker, but her request was denied. Perez soon returned to the hospital and remained there for approximately two months. Upon her release, she again requested the return of her children from the Bureau and from the two institutions at which they had been placed, but these requests were rejected. She repeatedly requested the return of her children over the next few months, and discovered in October 1971 that one child had been transferred to a foster home, without any advance notice to her.

Perez did not sign any papers nor consent to the Bureau's control of the custody of her children, and the agency made no effort to seek judicial authorization or ratification of the initial removal or the continued detention of the children for over two years. More than two years after the family had been separated, Perez filed a petition in the New York Supreme Court seeking a writ of habeas corpus. Only then did defendants file a neglect proceeding in the New York Family Court.

The Second Circuit found that the State had deprived Ms. Perez and her children of their constitutionally protected liberty interest to live together as a family.

> It is admitted that appellees did not obtain judicial authorization to retain custody until ... some 36 months after their initial emergency action, and that this authorization was sought only after Perez had instituted a habeas corpus proceeding.... Moreover, the evidence is clear that this failure to act was in the face of repeated requests by the mother for the return of her children. Yet, both the trial court and appellees argue that this failure to seek prompt judicial ratification of emergency action was not constitutionally defective because the state remedy of habeas corpus was always available to appellants. It is asserted that this remedy provided an opportunity for an adequate hearing.
>
> ....
>
> ... In the present case, the initial physical removal of the children during an emergency, while constitutionally permissible, was without explicit parental consent. This action and the continued separation of the family by retention of custody was based on a unilateral and untested evaluation of the mother's fitness as a parent.
>
> ....
>
> In this situation, the state cannot constitutionally "sit back and wait" for the parent to institute judicial proceedings. It "cannot ... [adopt] for itself an attitude of 'if you don't like it, sue.'" *Kimbrough v. O'Neil,* 523 F.2d 1057, 1060 n. 3 (7th Cir.1975) (Swygert, J., concurring). The burden of initiating judicial review must be shouldered by the government.

We deal here with an uneven situation in which the government has a far greater familiarity with the legal procedures available for testing its action. In such a case, the state cannot be allowed to take action depriving individuals of a most basic and essential liberty interest which those uneducated and uninformed in legal intricacies may allow to go unchallenged for a long period of time.... (citations omitted) *Id.* at 826–28.

As in *Duchesne*, the defendants here originally took custody of Matthew in an emergency, to protect him from suspected abuse. Though such action was taken without Weller's consent, we have determined that there is no constitutional requirement of a pre-deprivation hearing under emergency circumstances. Like Ms. Perez, however, Weller alleges that his repeated requests for a hearing were ignored (paragraph 33), and that he was never granted a hearing to judicially ratify the state's emergency action. We agree that, even if it is constitutionally permissible to temporarily deprive a parent of the custody of a child in an emergency, the state has the burden to initiate prompt judicial proceedings to ratify its emergency action. Unlike *Duchesne*, in our case only four months passed after the state's emergency action in March 1986, before Weller voluntarily surrendered custody of Matthew in July 1986. Nevertheless, an utter lack of judicial action ratifying the deprivation of custody for four months is clearly not the prompt due process that the Constitution requires. In the present case we have an additional concern, because it is alleged that in addition to depriving Weller of custody without a hearing, defendants arranged for Matthew to be taken out of the jurisdiction of Maryland, thereby reducing the possibility of a post-deprivation hearing. *See Hooks v. Hooks*, 771 F.2d at 942.

Therefore, we remand to the district court for a factual inquiry into whether the defendants denied Weller his protected liberty interest in the custody of Matthew. Proof that defendants deprived Weller of the custody of Matthew without a hearing—either prior to the transfer of custody or promptly after an emergency transfer of custody—would show a due process violation, for which appropriate relief may be granted. Since the state is not a person under § 1983, we note the existence of jurisdiction pursuant to 28 U.S.C. § 1343 for a claim under 42 U.S.C. § 1983 only against those defendants who are not state agencies or state officials. *See Will v. Michigan Dep't of State Police*, — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). We also note that federal jurisdiction generally exists pursuant to 28 U.S.C. § 1331 for constitutional violations, but as discussed below, we uphold the dismissal of all claims against the state defendants because such suit is barred by the Eleventh Amendment.

Our remand of this issue for further proceedings should not be construed as an invitation to litigate issues not central to the due process claim which we have addressed. Federal courts have traditionally avoided deciding issues of family law. *See, e.g., Solomon v. Solomon*, 516 F.2d 1018, 1024 (3d Cir.1975). Where post-deprivation state procedures are available which satisfy due process concerns, it is particularly appropriate for the federal courts to abstain from deciding matters best left to the states. We do not deviate from the approach taken by other Circuits in this respect. *See Ellis v. Hamilton*, 669 F.2d at 514–516; *Huynh Thi Anh v. Levi*, 586 F.2d 625, 632–34 (6th Cir.1978).

However, we are also in agreement with those jurisdictions which have not hesitated to resolve due process claims arising out of custody disputes where a constitutional claim is squarely raised and the state law issues are not central to the claim. *See, e.g., Hooks v. Hooks*, 771 F.2d 935 (allegation that state actors conspired to deprive parent of custody of children without due process states cause of action under § 1983); *Roe v. Borup*, 500 F.Supp. 127 (E.D.Wis.1980) (allegation that guardian ad litem helped deprive parents of custody of child without an adequate hearing states cause of action under § 1983); *Duchesne v. Sugarman*, 566 F.2d 817. As noted by the Sixth Circuit, the "prudential concerns" which warrant abstention by federal courts

in more typical domestic disputes are absent in such a case.

> While plaintiff's claim arises out of a custody dispute, adjudication of the alleged civil rights violation to the extent it seeks damages does not require the court to exercise jurisdiction over or resolve any of those state law matters within the scope of the domestic relations exception.

*Hooks v. Hooks,* 771 F.2d at 942.

What we have said requires only that this theory of liability not be dismissed for lack of subject matter jurisdiction. We express no opinion on the merits of the claim. Because no record exists at this stage, beyond the confusing allegations in the complaint, it is possible that discovery will reveal that some adequate post-deprivation hearing did in fact take place. Should that be the case, a pre-trial disposition of the claim may ultimately be appropriate. On remand, it would be appropriate for the district court to direct plaintiff to amend his complaint, so that the myriad of excess claims, which were properly dismissed, are eliminated.

## IV.

### DEFENDANTS

#### A. *Defendants Not Implicated By Due Process Claim*

 It seems clear that the single due process claim does not implicate all named defendants. For example, a careful review of the complaint reveals no allegations against Benjamin L. Brown or Richard L. Hamilton, and we hold that these defendants were properly dismissed for

---

**10.** Mr. Brown was named individually and in his capacity as City Solicitor for the City of Baltimore Law Department. Mr. Hamilton was named individually and in his capacity as Acting Director of the Juvenile Services Administration Department of Health and Mental Hygiene for the State of Maryland. Ms. Blimline was named individually and in her capacity as Assistant City Solicitor and Attorney for the Department of Social Services of Baltimore City.

**11.** Mr. Becker was sued individually and in his capacity as Special Assistant City Solicitor and

---

failure to state a claim against them. Similarly, claims against defendant Marilyn Blimline were properly dismissed because the sole allegation which implicates her (in paragraph 63) states only that she presented a shelter care petition to the court, and no allegations suggest that Ms. Blimline played any part in the alleged violation of due process.[10] Further, the only allegations against James S. Becker do not concern the due process claim at issue, and therefore were properly dismissed.[11] Permitting amendment of the complaint might enable the district court to determine which additional individual defendants, if any, may properly be dismissed either prior to service of the complaint or at a later stage of the proceedings. The dismissal of claims against institutional defendants and officials of those agencies acting within their official capacities is discussed below.

#### B. *State Defendants*

 The Eleventh Amendment embodies the principle of sovereign immunity and prohibits suit by private parties against states in federal courts unless a state has waived its immunity. Appellant has not suggested to this Court that Maryland has waived its immunity to actions brought in federal court, nor have we discovered any such waiver. The waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts. *Smith v. Bernier,* 701 F.Supp. 1171 (D.Md.1988); Md.St.Gov't.Code Ann. § 12–104 (1984). A state's waiver of immunity from suit in state court "is not enough to waive the immunity guaranteed by the Eleventh Amendment." *Atascadero State*

---

Attorney for the Department of Social Services of Baltimore City. Weller alleges that Mr. Becker withheld evidence and offered false evidence regarding alleged child abuse to a court in an adjudicatory hearing. Even if such allegations are true, they do not state a claim for damages under § 1983, as Becker is entitled to absolute immunity for his prosecutorial role. *See Myers v. Morris,* 810 F.2d 1437 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). In any event, there are no allegations that Becker helped prevent a custody hearing.

*Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (citations omitted). Therefore, we uphold the dismissal of claims against the JSA and the Department of Human Resources under the Eleventh Amendment.[12]

In addition, suit against the state officials acting in their official capacities is a suit against the State. *See Will v. Michigan Dep't of State Police,* —— U.S. at ——, 109 S.Ct. at 2311. The dismissal of claims against state officials acting in their official capacities was also proper under the jurisdictional bar of the Eleventh Amendment, although these officials may be sued in their individual capacities.

### C. *Municipal Defendants*

Municipal entities do not enjoy absolute immunity under the Eleventh Amendment. It appears that the Department of Social Services for the City of Baltimore is not a state agency, but rather, is a municipal entity.[13] However, municipal entities are liable under § 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A municipality may not be sued under § 1983 on a *respondeat superior* theory. *Id.* In this case, the complaint is replete with allegations that BCDSS's actions were undertaken in clear violation of official policy but there are no allegations that the acts were pursuant to usage, custom, or official municipal policy. Therefore, no claim is stated against BCDSS under 42 U.S.C. § 1983.

In addition, plaintiff cannot rely on federal jurisdiction under § 1331 for a due process claim against the City of Baltimore. There is no implied cause of action against a municipality for damages under the Fourteenth Amendment for the acts of its employees, and there is no alternative basis for any federal claim against BCDSS. *Cale v. City of Covington,* 586 F.2d 311 (4th Cir.1978). Therefore, we uphold the dismissal of all claims against BCDSS and the officials of that agency acting in their official capacities under Fed.R.Civ.P. 12(b)(6). The officials may be sued individually.

### D. *Individual Government Defendants*

Qualified immunity shields from civil damages liability government officials performing discretionary functions so long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The principle of qualified immunity reflects the concern that civil damages awards against public officials for every judicially determined violation of constitutional rights would prove too expensive to the public, discourage public service employment, and impair governmental decision-making. *Id.* at 814, 102 S.Ct. at 2736.

Today we hold that a parent is entitled to a hearing initiated by the State before he may be deprived of the custody of his child, and in an emergency a prompt hearing may ratify the state action. However, we leave to the district court the determination of whether this constitutional right was clearly established at the time of the alleged deprivation. In addition, we remand to the district court for additional factual inquiry into other subjective and objective components of the defense. *Harlow v. Fitzgerald,* 457 U.S. at 815, 102 S.Ct. at 2736. Finally, we note that any ultimate award of damages against remaining individual defendants should be limited to compensation for injuries which resulted from the deprivation of Weller's protectible interest in

---

**12.** Application of the Eleventh Amendment to government agencies depends on whether the agency is an arm of the State. *See Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Appellant has not argued that either of these agencies are not "arms of the State" entitled to Eleventh Amendment immunity.

**13.** Although we assume solely for the purposes of this analysis that BCDSS is a municipal agency and not a state agency, the distinction is purely academic in the instant case, since under either categorization, the claims against it were properly dismissed.

March 1986, and which injuries occurred prior to Weller's voluntary surrender of his protected interest in July 1986.

## V.

## CONCLUSION

We uphold the dismissal of all claims for lack of federal jurisdiction with the sole exception of the alleged due process violation discussed above. In addition, we uphold the district court's dismissal of claims against Benjamin Brown, Richard Hamilton, James Becker and Marilyn Blimline, on the basis that there are no allegations against those defendants to implicate them in the alleged due process violation. We uphold the dismissal of all claims against the two state agencies, on the basis that they are entitled to immunity from suit in federal court under the Eleventh Amendment. Further, we uphold the district court's dismissal of all claims against the municipal agency, BCDSS, on the basis that no cause of action is stated against the municipality.

However, we reverse the dismissal of the alleged due process violation against the remaining individual defendants, and remand those claims to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.