NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0322n.06

Case No. 17-3850

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 28, 2018
DEBORAH S. HUNT, Clerk

GARY DRESSLER, )
)
    Plaintiff-Appellant )
)
)    ON APPEAL FROM THE UNITED
v. )    STATES DISTRICT COURT FOR
)    THE SOUTHERN DISTRICT OF
BRADFORD RICE, et al., )    OHIO
)
    Defendants-Appellees. )

BEFORE: COLE, Chief Judge; CLAY and THAPAR, Circuit Judges.

CLAY, Circuit Judge. Plaintiff Gary Dressler ("Dressler") appeals from the order entered by the district court granting the motions for summary judgment of Defendants Bradford Rice ("Rice"), Safe Environment Business Solutions, Inc. ("SEB"), Jeffrey Zucker ("Zucker"), Jerry Hodges ("Hodges"), Paul Humphries ("Humphries"), Jeffrey Blackwell ("Blackwell"), Unknown Jane/John Does, the City of Cincinnati ("Cincinnati"), Larry Noschang ("Noschang"), Pierce Bryant ("Bryant"), and the Kroger Co. ("Kroger"), and denying Dressler's motion for summary judgment. For the reasons set forth below, we **AFFIRM** the decision of the district court.

## BACKGROUND

### I. Factual History

On September 20, 2013, Dressler went grocery shopping at Kroger while open carrying a holstered handgun. Rice was working security at the store and wore a security guard uniform with

arm patches and a holstered handgun. Rice was an employee of SEB, a company that provided security guard services at various Kroger locations.

After Dressler entered the Kroger vestibule, Rice approached Dressler. Dressler knew that Rice was approaching him specifically. As Rice came towards him, Dressler turned so that the two were face-to-face. Rice instructed Dressler to return his firearm to his vehicle or leave the store. However, Dressler did not hear "a word out of his mouth," as he has hearing problems— Dressler cannot hear in his left ear and can only hear in his right ear if it is quiet. (R. 80, Dressler Depo., PageID # 676–77, 731.) Dressler thought Rice might be a homeless person because he looked "scruffily." (*Id*. at # 731–32.) Rice repeated his instruction to Dressler. Because he did not hear anything and because he thought Rice was homeless, Dressler turned around and continued into the store. Dressler admitted that he turned away in a hurry because he wanted to get away from Rice.

After Dressler ignored his instruction, Rice contacted the police and "requested a cruiser be sent in order to safely avoid any escalation from [Dressler] and the current situation." (R. 85-2, Incident Report, PageID # 1428.) The call for service from the police reflects that there was a customer with a gun who refused to stop when security told him there were no guns allowed in the store. Screenshots from a Kroger security camera show Rice approaching Dressler, Dressler and Rice standing face-to-face, Dressler turning away from Rice and walking into the store, and Rice following after Dressler for a few seconds before turning around and placing a call on a phone.

Zucker and Hodges, Cincinnati Police Officers, were working patrol when they received the "radio run" to Kroger for police assistance. (R. 84-5, Zucker Affidavit, PageID # 1379; 84-6 Hodges Affidavit, PageID # 1382.) When they arrived, Rice informed the officers that there was an individual who refused to leave the store despite being asked to do so. The two officers then

directly approached and stopped Dressler. Zucker asked Dressler why he was in the store, and told him that the security guard previously told him not to enter the store with his gun.

The officers also told Dressler that there was a sign by the entrance to Kroger which said he could not come into the store with a gun. Dressler asked to go and look at the sign, and the officers, Rice, and Dressler walked out of the store. (*Id*.) When outside, Rice pointed to a sign, which he said provided that a person could not carry a firearm in the store. Dressler disagreed, responding that the sign did not "say that at all." (R. 80, Dressler Depo., PageID # 746.) The sign involved said, "WARNING!! IF YOU ARE CARRYING A FIREARM. Under the statutes of Ohio, if you possess a firearm in any room in which liquor is being dispenses in premises . . . , you may be guilty of a felony and are subject to a term of actual incarceration of one or two years." (R. 82-1, Exhibit E, Photos, PageID # 1067.) Zucker then told Dressler that he was under arrest for criminal trespass.[1]

Zucker spoke to Noschang, the Kroger store manager. Zucker said Noschang "confirmed that he wanted Mr. Dressler removed from the premises and charged with criminal trespass." (R. 84-5, Zucker Affidavit, PageID # 1380.) By contrast, Noschang said he only told Zucker he did not want Dressler back in the store, but did not suggest that he wanted Dressler arrested.

Dressler was placed in the police car, and taken to the Hamilton County Justice Center. After a bench trial, Dressler was found not guilty of criminal trespass.

---

[1] The parties dispute Dressler's demeanor during the encounter. Dressler testified that while talking to the officers he had his "normal demeanor." (R. 80, Dressler Depo., PageID # 920.) He said that he talks with his hands, always speaks loudly, and leans forward in order to hear. He said he may come across as being agitated, but it is because of the hearing problems. Rice reported that Dressler was "confrontational" with the police. (R. 85-2, Incident Report, PageID # 1428.) Both officers said that Dressler was "very argumentative," and Zucker said he became "more agitated as the conversation continued." (R. 84-5, Zucker Affidavit, PageID # 1379–80; R. 84-6, Hodges Affidavit, PageID # 1383.)

## II.    Procedural History

On September 18, 2015, Dressler filed suit against Rice, SEB, Zucker, Hodges, Humphries, Blackwell, John/Jane Does, the City of Cincinnati, Noschang, Bryant, and Kroger.  First, Dressler alleged that Zucker, Hodges, John/Jane Does, Humphries, Blackwell, and the City of Cincinnati violated Dressler's Second Amendment right to bear arms, Fourth Amendment right to be free from unreasonable searches and seizures, Fifth Amendment right to due process, and Fourteenth Amendment right to due process and equal protection.  Second, Dressler alleged that Zucker, Hodges, John/Jane Does, Humphries, Blackwell, Rice, Noschang, Bryant, SEB, Kroger, and Cincinnati "entered into an agreement and conspired among themselves to engage in unlawful conduct, *i.e.* depriving [Dressler] of rights guaranteed to him under the 2nd, 4th, 5th and 14th Amendments."  (R. 1, Compl., PageID at # 16–17.)  Third, Dressler alleged various torts against the Defendants, including false arrest, false imprisonment, conversion, malicious prosecution, and intentional infliction of emotional distress.

All parties filed motions for summary judgment.  On July 18, 2017, the district court granted Defendants' motions for summary judgment and denied Dressler's motion for summary judgment.  The district court held that Dressler's § 1983 claims against Kroger and SEB failed because they could not be held liable under a theory of vicarious liability or *respondeat superior*.  The court held that Dressler's § 1983 claims against Rice and Noschang failed because their actions were not fairly attributable to the state.  The court also held that Dressler's conspiracy claims failed because there was no evidence of a conspiracy.  The district court held that Dressler's § 1983 claims against the state actors failed because the state actors were entitled to qualified immunity.  Specifically, on the Second Amendment claim, the district court concluded there was no clearly established right to openly carry a firearm in a private establishment.  And on the Fourth

Amendment claim, the district court concluded there was no violation of a constitutional right because there was probable cause to arrest Dressler for criminal trespass. Finally, the district court held that all of Dressler's tort claims failed.

On August 15, 2017, Dressler filed his notice of appeal. On appeal, Dressler argues that the district court erroneously concluded that there was probable cause to support his arrest and resulting search, that there was no conspiracy between the private and public actors, and that the private parties were not acting under color of state law.[2]

## DISCUSSION

### I.    Probable Cause to Arrest Dressler for Criminal Trespass

#### Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party must demonstrate the "basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (internal citations and quotation marks omitted). The nonmoving party "must set forth specific facts showing that there

---

[2] In his opening brief, Dressler does not mention the claims against Humphries, John/Jane Does, the City of Cincinnati, or Blackwell. Dressler also does not mention his state tort claims. Therefore, we will not consider these claims, and we affirm the district court's grant of summary judgment to Defendants on those claims. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations and quotation marks omitted). The reviewing court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. A court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**Analysis**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "We have defined probable cause as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *Hoover v. Walsh*, 682 F.3d 481, 499 (6th Cir. 2012) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)). "An officer has probable cause when the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010)). "A reviewing court must assess the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). "Determining whether probable cause existed, 'presents a jury question, unless there is only one reasonable determination possible.'" *Id*. (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)).

Dressler was charged with criminal trespass in violation of OHIO REV. CODE § 2911.21. The question for the Court is whether the officers had probable cause to arrest Dressler for criminal trespass.

Ohio's criminal trespass statute provides:

(A) No person, without privilege to do so, shall do any of the following:
(1) Knowingly enter or remain on the land or premises of another;
(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;
(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;
(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either.

OHIO REV. CODE § 2911.21.

The parties agree that Dressler was a business invitee on Kroger's property and was at least initially permitted on Kroger's premises. However, "[t]he law in Ohio . . . provides that a business invitee's privilege to remain on the premises of another may be revoked upon the reasonable notification to leave by the owner or his agents." *Marcus v. Revco Disc. Drug Centers, Inc.*, No. 66090, 1994 WL 449672, at *2 (Ohio Ct. App. Aug. 18, 1994) (citing *City of Richmond Heights v. Hoolin*, No. 55818, 1989 WL 98765, at *3 (Ohio Ct. App. Aug. 24, 1989)). Privilege is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." OHIO REV. CODE § 2901.01(A)(12).

Rice revoked Dressler's privilege to be on Kroger's property as a business invitee when Rice twice instructed Dressler to return his firearm to his car or leave the store. By communicating this instruction to Dressler twice, Rice provided Dressler with reasonable notice to leave.[3] But Dressler did not leave. And "[r]emaining upon the premises of another without legal authority after being notified to leave constitutes the offense of criminal trespass." *State v. Haley*, No. 2014CA0002, 2014 WL 2601673, at *3 (Ohio Ct. App. 2014); *see also City of Shaker Heights v. Marcus*, No. 63116, 1992 WL 309354, at *2 (Ohio Ct. App. Oct. 22, 1992) ("If asked to leave, the business invitee is not privileged to refuse . . . ."); *State v. Carriker*, 214 N.E.2d 809, 812 (Ohio Ct. App. 1964) ("[T]he trespass statute . . . provides that remaining upon the premises of another without legal authority after being notified to leave is a misdemeanor."). Thus, while Dressler had the privilege to enter the Kroger initially, that privilege was not indefinite, and "[o]nce [his] privilege was revoked, the criminal trespass was completed at the moment [Dressler] refused to leave." *Cleveland v. Dickerson*, 60 N.E.3d 686, 691 (Ohio 2016).

After his request was ignored, Rice requested police assistance and explained the situation to Zucker and Hodges upon their arrival. The officers then personally observed Dressler still on Kroger's premises. After they confronted him, Dressler continued to dispute the contention that he was not allowed to bring a gun in the store. Consequently, based on the information provided to the officers and their own observations of and interactions with Dressler, the police had probable cause to believe Dressler was criminally trespassing.

Dressler puts forward a number of arguments for why the police did not have probable cause to arrest him. As the district court characterized them, "the crux of Plaintiff's argument is that because he was lawfully open carrying his firearm, he had the privilege to remain in Kroger

---

[3] Dressler testified that he had no reason to believe that Rice knew he was hard of hearing.

and should not have been asked to leave." (R. 113, Opinion, PageID # 2115.) We find all of Dressler's arguments unpersuasive.

First, Dressler argues that the reason behind the request to leave must be reasonable and that Rice's request was unreasonable. But Dressler is mistaken. Ohio law requires only that the notification to leave be reasonable, not the underlying reason for making the request. *See Marcus*, 1994 WL 449672, at *2. A "property owner's motive in making a request is irrelevant." *Dickerson*, 60 N.E.3d at 692 ("In our view, a strict interpretation of R.C. 2911.21 reveals that there is nothing in the language of the statute that would require the state to prove the agent or owner's motivation or basis for revoking an individuals' 'implied consent' to be on a specific property."); *State v. Gish*, No. 94 CA 1612, 1994 WL 693921, at *1 (Ohio Ct. App. Dec. 1, 1994) ("The elements of R.C. 2911.21, criminal trespass, do not require that the owner of private property establish why he wants a defendant to leave the premises. [The statute] only requires that the alleged trespasser refuses to leave the premises when told to do so.").

Next, Dressler argues that an invitee's privilege may be revoked only under three specific circumstances: (1) commission of a crime; (2) no privilege at all; and (3) no legitimate business on property. This too is an incorrect reading of Ohio law. A property owner's ability to revoke the privilege of a business invitee is not so limited. *See Marcus*, 1994 WL 449672, at *2 ("The law in Ohio . . . provides that a business invitee's privilege to remain on the premises of another may be revoked upon the reasonable notification to leave by the owner or his agents." (citation omitted)).

Dressler then argues that the "right to exclude . . . is not absolute, for such exclusions may not violate another law . . . ." *Marcus*, 1994 WL 449672, at *2. He contends that Rice's reason

for asking Dressler to leave violated OHIO REV. CODE § 9.68[4] and the Second Amendment. However, when the Ohio cases provide that an exclusion may not violate another law, they are referring to laws like 42 U.S.C. § 2000 and OHIO REV. CODE § 4112, which deal with discrimination on the basis of particular characteristics like race, color, religion, national origin, sex, disability, and age. *Id.*; *Vill. of N. Randall v. Offenburger*, No. 64880, 1994 WL 132439, at *2 (Ohio Ct. App. Apr. 14, 1994). No violation of these kinds of laws is alleged (and none of the evidence presented demonstrates that any such violation occurred). *See Randall*, 1994 WL 132439, at *2.

Furthermore, it does not appear that Rice violated any law by asking Dressler to leave. Dressler has failed to cite to anything that suggests the Second Amendment or § 9.68 prevents a private landowner, like Kroger, from excluding people from carrying guns on their land.[5] "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *D.C. v. Heller*, 554 U.S. 570, 626 (2008).

---

[4] OHIO REV. CODE § 9.68 provides, "Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition."

[5] Dressler suggests that OHIO REV. CODE 2923.126(C)(3)(a) provides the exclusive means of preventing someone from coming on their property with a gun. The Ohio statute provides, "Except as provided in division (C)(3)(b) of this section, the owner or person in control of private land or premises, and a private person or entity leasing land or premises owned by the state, the United States, or a political subdivision of the state or the United States, may post a sign in a conspicuous location on that land or on those premises prohibiting persons from carrying firearms or concealed firearms on or onto that land or those premises." The statute further provides that any person who knowingly violates a posted prohibition is guilty of criminal trespass. *Id.* Contrary to Dressler's assertion, the statute provides that a business *may* post a sign indicating that firearms are not permitted on the premises. It does not require that a landowner do so or provide that this is the only way a private landowner may prohibit guns on their property.

Finally, Dressler argues that the police lacked probable cause once they realized that there was no sign outside of Kroger prohibiting customers from carrying firearms in the store. Apparently, Rice had indicated to Dressler and the officers that there was such a sign. During the confrontation, Dressler, Rice, and the officers went outside to look for this sign. There was a sign outside, but it did not prohibit all guns in the store as Rice had suggested. Dressler argues that once the officers realized there was no sign outside Kroger prohibiting firearms inside the store, "they had no reasonable suspicion that he was committing or about to commit a crime to continue to detain him." (Dressler Br. at 38–39.) We do not think that the lack of a sign outside Kroger is as important as Dressler makes it out to be. Regardless of whether a sign was present, Dressler had been asked to leave the store multiple times and remained on Kroger property anyway. Ultimately, the existence of the sign is irrelevant.

We do not believe the district court erred in concluding that Zucker and Hodges had probable cause to arrest Dressler for criminal trespass. Again, Rice asked Dressler twice to leave the store. Dressler did not comply with that request, but instead remained inside the store. Officers arrived, were given this information, and approached Dressler in the store. Dressler remained on store property even after the police confronted him. "[R]easonable minds can come to but one conclusion, namely, that [Zucker and Hodges] reasonably believed that [Dressler] refused to vacate the premises after having been notified to leave." *Koss v. Kroger Co.*, No. 07AP-450, 2008 WL 2308771, at *6 (Ohio Ct. App. June 5, 2008).

Because there was probable cause to arrest Dressler for criminal trespass, there was no violation of Dressler's Fourth Amendment rights. Because there was no constitutional violation, the district court correctly awarded the officers qualified immunity and also granted summary

judgment to Defendants. Accordingly, we affirm the district court's grant of summary judgment to Defendants on Dressler's Fourth Amendment claim.

## II. Conspiracy to Deprive Dressler of his Second Amendment Rights

### Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Gillis*, 845 F.3d at 683. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### Analysis

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id*. at 944. Instead, the plaintiff must show that: (1) "a single plan" existed; (2) "the alleged coconspirator shared in the general conspiratorial objective" to deprive the plaintiff of a constitutional right (or a federal statutory right); and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Id*.

We think that Dressler has failed to show that Rice and Noschang conspired with police to deprive Dressler of his constitutional right to carry a firearm. That Rice called the police for assistance in removing an unwanted person from the store for which he was providing security does not provide evidence of engaging in a conspiracy with the police. That Rice provided the police with information about the conduct that caused him to request assistance also does not support Dressler's conspiracy claim. Finally, that Rice and Noschang told the officers they wanted Dressler arrested does not provide evidence of "a single plan" to deprive Dressler of his right to

carry a firearm. *Ellison v. Garbarino*, 48 F.3d 192, 197 (6th Cir. 1995) ("[P]olice assistance in the lawful exercise of self-help does not create a conspiracy with the private person exercising that self-help." (quoting *Spencer v. Lee*, 864 F.2d 1376, 1382 (7th Cir. 1989)); *Wilkerson v. Warner*, 545 F. App'x 413, 421–22 (6th Cir. 2013) (finding no evidence of a conspiracy when the person "mere[ly] furnish[ed] information to police officers who take action thereon" (quoting *Lee v. Town Estes Park*, 820 F.3d 1112, 1115 (10th Cir. 1987)); *Burnside v. Walters*, No. 09-2727-JDT/tmp, 2014 WL 4809937, at *7 (W.D. Tenn. Sept. 26, 2014) (finding a conspiracy claim failed "[b]ecause Burnside has only alleged that Puljic and the YMCA provided information to the officers in an effort to have Burnside arrested").[6]

There is no other evidence in the record suggesting that the Defendants conspired with each other to violate Dressler's Second Amendment rights. Instead, the evidence "points to alternative grounds for the actions" of both officers. *Wilkerson*, 545 F. App'x at 422. Rather than an effort to deprive Dressler of his right to carry a firearm, the evidence supports a finding that the police arrested Dressler because he had been asked more than once to leave the property or return his gun to his car, and refused. *See id.*

We also think the evidence is insufficient to support a conspiracy claim against Bryant,[7] SEB, and Kroger. Dressler argues that SEB, Kroger, and Bryant were "indirectly" involved in the conspiracy because they were notified about the arrest and "ratified" the actions of Rice and Noschang by "fail[ing] to correct the situation when given notice of the improper arrest."[8]

---

[6] Dressler contends that asking police to arrest someone goes beyond furnishing information. However, it cannot be the case that merely requesting that police take certain action is enough to constitute a conspiracy between the private and state actors.

[7] Bryant is Kroger's Division Loss Prevention manager who heard from Rice and Noschang about the incident.

[8] Dressler also argues that SEB and Kroger "ratified the arrest by failing to stop the criminal prosecution." (Dressler Br. at 47.)

(Dressler Br. at 54.) But Bryant was not involved in any of the events that led up to Dressler's arrest. And it is unclear how failing to take action after Dressler had already been arrested constitutes action in furtherance of a conspiracy.

Even viewing the evidence in the light most favorable to Dressler, there is not sufficient evidence of the conspiracy that Dressler alleges. *See Wilkerson*, 545 F. App'x at 422. Because there is insufficient evidence of a conspiracy, the district court correctly granted summary judgment to Defendants on Dressler's conspiracy claim. Accordingly, we affirm the district court's grant of summary judgment to Defendants on this claim.

## III.     Private Parties and § 1983 Liability

### Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Gillis*, 845 F.3d at 683. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### Analysis

"Section 1983 does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007). However, a private party may be liable under § 1983 if their conduct is "fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231–32 (6th Cir. 1996) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)). "There are three tests employed by the courts to determine whether the challenged conduct is fairly attributable to the state: (1) the public function test, (2) the state compulsion test and (3) the symbiotic relationship or nexus test." *Id*. at 232 (citing *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992)). Dressler argues that the symbiotic relationship or nexus test "is applicable to the private parties in Dressler's case," whereas the public function

and the state compulsion tests are not. (Dressler Br. at 50, 52.) Under that test, Dressler must show a "sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the state itself." *Collyer*, 98 F.3d at 232 (quoting *Wolotsky*, 960 F.2d at 1335).

Dressler's argument that there was a symbiotic relationship or sufficiently close nexus rests on his assertion that there was a conspiracy between the private parties and the police. But as explained above, there was insufficient evidence of a conspiracy between the private parties and the police. Again, "the cases indicate that utilization of public services by private actors does not convert private action to state action." *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Cir. 2000). And police assistance in the lawful exercise of self-help does not convert private action into state action. *Ellison*, 48 F.3d at 197. Rice and Noschang's request to have Dressler charged with criminal trespass does not rise above the use of police assistance in the exercise of self-help. "If this were all that was required to find state action, then every private citizen who solicited the aid of the police in resolving disputes or in ejecting unwanted persons would be transformed into a state actor. A mere request for assistance from an available police officer cannot be sufficient to form a nexus between the state and the private action." *Lansing*, 202 F.3d at 833. SEB, Kroger, and Byant's failure to stop Dressler's criminal prosecution is not conduct "fairly attributable to the state."

Consequently, the district court properly awarded summary judgment to the private Defendants on this claim. Accordingly, we affirm the district court's grant of summary judgment to the private Defendants.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.